The defendant prosecutes this writ of error to a judgment against it for $12,000.00 entered upon a verdict of a jury in the Circuit Court of Kanawha County for personal injuries sustained by the plaintiff at the defendant's manufacturing plant in the city of Charleston on the 26th day of September, 1925. This is the second time this case has been before this Court for review. The first decision is reported in 104 W. Va. 425,140 S.E. 283.
As appears from the former decision, plaintiff was an employee of an independent contractor engaged in the erection of certain smokestacks through the roof of the shed which extended along the north side of one of the larger buildings of the defendant's plant.
The upper edge of the shed roof was attached to the side of the main building about nine feet below its eave. For a height of from four to five feet above the shed roof the side *Page 238 
of the large building was constructed of metal sheeting without any openings in it. Above the sheeting, and extending up under the eaves for nearly, if not entirely, the length of the side of the building, there were contiguous glass windows in sashes 53 inches high. On the inside of the wall, slightly below the level of the window sills, there was a track or craneway on which was operated the northern end of a traveling crane. The other end of the crane moved on a runway on the opposite side of the building. The northern end of the crane extended to within about a foot of the siding and to within a few inches of the upright steel beams or columns which were just inside of the steel sheeting. Plaintiff was directed by his foreman to climb into one of the open windows and fasten one end of a guy rope, the other end of which was about to be fastened by another employee of the first section of the third of the series of six smokestacks which were being erected as above stated. In executing the order of his foreman, plaintiff climbed into the window, with the assistance of the foreman, and stood with one foot on the window sill and the other on the runway with his back to the western part of the building where he had observed the crane, while he undertook to fasten the end of the rope to a metal strut which ran along the side of the building above the window. Plaintiff did not assist in the erection of the first two stacks erected but he testifies that after he began work in connection with the erection of the third stack one of his fellow workmen told him that the stacks "had been guyed to a strut along near the upper edge of the window frame." It was reasonable for plaintiff to assume that this procedure was known to the defendant's employees. Before he had quite completed his task, the crane was moved along the runway from the plaintiff's rear and crushed him against one of the upright steel columns, injuring him very severely. Plaintiff says that when he first climbed in the window he looked to see the position of the crane and observed that it was about 15 feet away from him, and that the man who was in charge of the crane was about 25 feet from the rope controls on the crane, apparently watching some other men *Page 239 
engaged at work at a forge; that the crane was not at that time being moved or used.
The principle of law on which the judgment was reversed and the verdict set aside when the case was formerly before us, as stated in the syllabus, was that the duty of reasonable care which a property owner owes to an invitee "does not extend to places beyond the invitation, and to which the invitee would not reasonably be expected to go." The facts then developed necessitated the application of that principle. The record did not show that the contractor had been given permission to use the track or the interior of the building near the track, nor that the defendant had been given notice that the contractor's workmen would use the track, or the part of the building where it was located; nor that the workmen had in fact used the track or the section of the building where it was located in such a notorious manner as to give the defendant notice of such use; nor was it manifest that such use was necessarily implied from the character of the work being performed. In that situation, it not appearing that there was any reason why the defendant's employees should have anticipated the presence of the plaintiff on the runway of the crane, it did not seem that there was any negligence on the part of the defendant in causing the movement of the crane which occasioned the plaintiff's injury.
On the re-trial of the case, however, there was developed substantial evidence which did not appear in the former record. Just as in the former record, it does not now appear that the contractor had been given formal permission to use the track or the interior of the building near the track, but it is brought into the present record that during the four or five days while the first two stacks were being erected and the riggings shifted, immediately prior to the day of the accident when the third stack was being erected, a number of the above mentioned windows along the top of the shed had been removed by the contractor's workmen and that guy ropes had been extended through the windows and tied to the frame of the building on the inside, and that one or more of the contractor's workmen had stood with one foot on the craneway while engaged in tying these ropes. This evidence, it is *Page 240 
true, is not without contradiction, but it appears affirmatively in the testimony of unimpeached witnesses of the plaintiff and has back of it now the sanction of a jury verdict. This new evidence appears in part in the testimony of one Massey, who was foreman for the contractor in the erection of the stacks numbers 1 and 2, but who was not a witness on the former trial. It is undisputed that if the operator of the crane had looked in the direction of the plaintiff before the crane was started on its movement toward him the presence of the plaintiff in his position of danger could have been observed. The view was unobstructed. Was there negligence on the part of the operator in not taking this precaution? On the record as it stood at the time of the former review, we held that negligence had not been proved; that there was no disclosure of facts which brought it to the attention of the defendant's employees that the plaintiff or his fellow workmen might be expected to be inside of the building on or near the runway of the crane; but on the present review we are constrained to hold that the facts developed at the last trial are sufficient to create a question for jury determination as to whether the defendant was guilty of negligence in the operation of the crane under the circumstances proven. The operator of the crane admits that he knew that the erection crew of the contractor was engaged in placing the smokestacks in position. He "saw them working around there;" "saw them out there." Necessarily a large portion of their work was being performed on the roof of the shed. This was just outside the windows from the runway of the crane on the north side of the building. There not appearing any reason why full credence should not be given to the testimony adduced by the plaintiff as to the removal of the windows, the tying of guy ropes inside of the windows and the presence of workmen in the proximity of the runway in fastening the ropes, all prior to the day of the plaintiff's injury, that evidence, in the light of the jury verdict, for the purposes of the present inquiry, must be taken as true. Defendant's officers and employees could not close their eyes to these facts. The removal of the windows (a fact undenied by the defense) should alone have put defendant's employees *Page 241 
on guard. But it is said that regular work of the plant inside of the building from which the windows were removed was not going along as was usual; that repairs were being effected therein at the time of the plaintiff's injury. Such being the fact, there was all the more reason why the operator of the crane, admittedly knowing that the stacks were being erected and that the contractor's workmen "were around there", should have made observation in the direction of the scene of their activities before he resumed the operation of the crane on the morning of the accident. While it is true that it does not appear from the record that it was indispensably necessary for the guy ropes to be fastened inside of the windows, it does appear that such procedure was convenient and practical. Ropes had to be fastened somewhere to hold the stacks. The removal of the windows, the tying of the ropes inside of the windows and the presence of the workmen in placing the ropes there, and the presence of the ropes in that position for hours after they had been so placed, all in open view, were such conspicuous facts as to give notice to the defendant's workmen that while the work of the erection of the smokestacks was in progress, men were apt to be in the immediate proximity of the crane track on the north side of the building and that consequently the crane ought not to be moved without reasonable precaution being exercised for the safety of the erecting contractor's workmen. It is hardly necessary to cite authorities for the propositions that an independent contractor at work on premises where his contract requires him to be is an invitee, and that while thus engaged he is entitled to the protection of ordinary care on the part of the owner or occupier of the premises and that such invitee must be furnished a reasonably safe place in which to work. Sesler v. Coal Company, 51 W. Va. 318; Williams, Adm'x. v. Belmont Coal Coke Company, 55 W. Va. 84; Wilson v. ValleyImprovement Company, 69 W. Va. 778; Smith, Adm'r. v. SundayCreek Company, 74 W. Va. 606; New York Lubricating Oil Co. v.Pusey, 211 F. 622; Thompson on Negligence, sec. 979.
Defendant complains of the action of the trial court on *Page 242 
certain instructions. Plaintiff's instruction No. 1, the giving of which is relied on by the defendant as error, follows:
 "The court instructs the jury that if you believe from the evidence that the defendant Kelly Axe Tool Company entered into a contract with the South Side Foundry Machine Works, whereby the latter company was to make and erect for the defendant at its factory in Kanawha County, certain stacks and chimneys, and that the South Side Foundry Machine Works sublet to the Metal Products Company that portion of said contract providing for the erection of said stacks and chimneys, and that the plaintiff, Ray C. Roberts, was, at the time of receiving his alleged injuries in the employ of the Metal Products Company and was actually employed by the latter company in the erection of said stacks and chimneys; and was at the time of said injuries at a place where he would reasonably be expected to be in the course of his work in erecting said stacks; and if you further believe from the evidence that an employee of the defendant Kelly Axe Tool Company, acting within the scope of his employment, negligently and carelessly and without the exercise of reasonable care for plaintiff's safety caused an electric crane, owned and operated by the defendant company as a part of its said factory equipment, to be run onto and against the plaintiff while he was so engaged and employed in the erection of said stacks and chimneys, and if the jury further believe from the evidence that the said Ray Roberts was not guilty of any negligence which contributed proximately to his own injury, then you should find for the plaintiff."
In criticism of this instruction it is said "that by permitting the jury to decide, upon all the evidence in general, the question whether or not there was reasonable expectation that the plaintiff would be on the craneway, the trial court thus permitted their finding to be based on certain facts in the evidence other than supposed notorious use of the craneway, when at the same time they might have concluded that plaintiff was not in a place where he would reasonably be expected to be by reason of notorious use of the craneway a *Page 243 
knowledge thereof on his part which was, under the law of the case, the only ground upon which defendant could be charged with a reasonable expectation of use of the craneway by plaintiff." In the former opinion in this case, it was stated that one of the inquiries for determination was as to whether the erection contractor's workmen had used the track or the interior of the main building near the track, in such a notorious manner as to give the defendant notice of said use. The word "notorious" was, of course, used in the sense of conspicuous, open, obvious. One of the requirements of the said instruction is, that in order to sustain a verdict for the plaintiff, the jury should believe that at the time of the injury the plaintiff was at a place where he would reasonably be expected to be in the course of his work in erecting said stacks. This was a question of fact to be determined by the jury; and one of the matters to be considered by the jury in that connection was as to whether there had been such notorious, conspicuous or obvious use of the runway or the inside of the building in the proximity of the runway as to give the defendant notice of such use, by the plaintiff at the time of his injury was to be anticipated, but it was not necessary to carry this proposition into the instruction. Instructions ordinarily do not purport to cover details of evidence. The trial court's action in modifying defendant's instructions Nos. 5 and 8 is also relied on as error. Instruction No. 5 as tendered reads:
 "The court instructs the jury that, in order for plaintiff to recover, he must prove by a preponderance of the evidence first, that use of the craneway had been (notoriously) made by the workmen of the Metal Products Company in such way and for such length of time and on such different occasions that defendant knew or should have known of such use; second, that as a consequence plaintiff believed that defendant knew of such use; and third, that plaintiff acted upon such belief in going upon the craneway; and that then defendant, after such (notorious) use, was so negligent in the operation of the crane as to cause plaintiff's injuries without negligence upon the part of the plaintiff; and if the jury believe from the evidence *Page 244 
that no such (notorious) use of the craneway had been made by the workmen of the Metal Products Company, or that, even though such (notorious) use of the craneway had been made, plaintiff did not act, in going upon the craneway, upon the belief that the defendant knew of such use, then the jury shall find for the defendant."
Before this instruction was read to the jury the court modified it by striking out the words "notoriously" and "notorious" as appear above in parentheses. Because this Court used the word "notorious" in the former opinion it does not follow that the idea then sought to be conveyed by the court cannot be conveyed in any manner other than by the use of the same word. As already stated, the thought intended to be emphasized in our former opinion in the use of that work, was conspicuousness or obviousness. That thought clearly appears in the above instruction even after the trial court had modified it. Note that the instruction as modified requires that before there can be a recovery for the plaintiff there must be proof by a preponderance of the evidence that the use of the craneway had been made by the workmen of the Metal Products Company in such a way and for such length of time and on such different occasions that defendant knew or should have known of such use. The thought there expressed bristles with the idea of conspicuousness. The trial court did not err in modifying the instruction. Defendant's instruction No. 8 also was modified by the elimination therefrom of the word "notorious" in one instance standing alone and in two instances in connection with short phrases of which it was the conspicuous element. The import and effectiveness of the instruction were not impaired by these changes and the trial court committed no error in making them. Defendant's instruction No. 6 was refused. It would have told the jury that a person must exercise a reasonable degree of care for his own safety in the presence of a known and obvious danger, and that if they believe from the evidence that the plaintiff failed to exercise such degree of care for his safety, even though the defendant may have been negligent in the operation of the crane, they should find for the *Page 245 
defendant. This instruction correctly states the law, but the substance of it was covered by the latter part of defendant's instruction No. 8 as modified and given to the jury. It correctly submitted to the jury the question of contributory negligence of the plaintiff.
Perceiving no prejudicial error in this record, we affirm the judgment.
Affirmed.