MILDRED G. CHENOWETH, *Admrx., Etc.*
ALICE WHITE, *Admrx., Etc.*
MARY SUE ISNER, *Admrx., Etc.*
*v.*
SETTLE ENGINEERS, *Inc.,* THE CITY OF ELKINS,
*Etc., et al.*

(No. 12633)

Submitted May 2, 1967.          Decided July 11, 1967.

CAPLAN, JUDGE, dissenting.

*Sam D. Lopinsky, Preiser, Greene & Hunt, Stanley E. Preiser, David J. Joel, L. Eugene Dickinson,* for appellants.

*John F. Brown, Jr., Kay, Casto & Chaney, George S. Sharp,* for appellees.

BROWNING, JUDGE:

Sometime previous to April 19, 1960, the City of Elkins entered into the construction of a sanitary sewer system and engaged E. A. Taylor & Son, Inc., a general contractor, for the purpose of actual construction and Settle Engineers, Inc., who had previously drafted the plans and specifications for the project, as consulting engineers. The agreement with Settle provided that Settle should provide general engineering supervision including a resident engineer when required and also provide for an inspector under the supervision of the resident engineer but to be paid by the city. The contract between the City and Taylor provided in substance, with regard to matters here pertinent, that the contractor should: exercise precaution for the protection of all persons including employees and property; save the city harmless from all actions and suits by reason of any injury or death; comply with all laws, ordinances and regulations bearing on the conduct of the work; and continuously maintain adequate protection of the work and the city's property. In connection with the above the contract provided that ''The contractor must furnish and put in place, at his own expense, such shores, braces, sheathing, etc., as may be required to support the sides and roof of the excavation and to prevent any movement which can in any way injure the masonry, diminish the necessary width of the excavation or otherwise injure or delay the work or endanger adjacent pavements, buildings, or other structures. If the Engineer is of the opinion that at any points, sufficient or proper supports have not been provided, he may order additional supports put in at the expense of the contractor and the compliance with such orders shall not release the contractor from his responsibility for the sufficiency of such supports. . . .'' The special conditions of the contract, under the title ''Authority & Duties of Inspectors'', provide: ''Inspectors, designated by the engineer, shall be authorized to inspect all work done and materials furnished. Such inspection may extend

to all or any part of the work and to the preparation or manufacture of the materials to be used. An inspector will be stationed on the work to report to the engineer as to the progress of the work and the manner in which it is being performed; also to report whenever it appears that the materials furnished and work performed by the contractor fail to fulfill the requirements of the specifications and the contract, and to call to the attention of the contractor any such failure or other default, but no inspection, nor any failure to inspect, at any time or place, however, shall relieve the contractor from any obligation to perform all of the work strictly in accordance with the requirements of the specifications. In case of any dispute arising between the contractor and the Inspector as to materials furnished or the manner of performing the work, the Inspector shall have authority to reject materials or suspend the work until the question at issue can be referred to and decided by the engineer. The Inspector shall perform such other duties as are assigned to him. He shall not be authorized to revoke, alter, enlarge, relax or release any requirements of these specifications, nor to approve or accept any portion of work, nor to issue instructions contrary to the plans and specifications. The Inspector shall in no case act as foreman or perform other duties for the contractor, nor interfere with the management of the work by the latter.'' The ''Special Conditions'' also provide that the contractor '' . . . shall be strictly responsible for any and all damage or injury of every kind and description, which directly or indirectly may be done to any property or sustained by any persons during the prosecution of the work resulting from any wrong-doing, misconduct, want of care or skill, or any negligence of himself or his agents and/or employees in his manner or method of executing said work or due to his non-execution of said work. . . .'' The contract again refers to inspectors under the heading ''General Stipulation'', after providing that the

contractor shall execute the work only in the presence of the engineer or inspector but such presence shall in no way relieve the contractor of responsibility for the work or for the furnishing of poor material or workmanship, by stating "Necessary authority is granted the Engineer or inspector over men actually engaged in any work embraced in this Contract, as to compliance with these specifications, and these men must obey his directions. . . ."

On April 19, 1960, plaintiffs' decedents were working in a ditch nine and one-half feet deep and approximately three feet wide on the project when the sides of the ditch caved in completely covering them and resulting in their deaths. The widows, as administratrices of their respective husbands' estates, instituted individual actions for wrongful death in the Common Pleas Court of Kanawha County against the City of Elkins and Settle Engineers, Inc., who in turn impleaded Taylor as a third party defendant on the basis of the contractor's indemnity. The three cases were consolidated for trial and, Settle having reached a compromise with plaintiffs in the meantime, the jury returned a verdict in favor of each plaintiff against the City of Elkins for the sum of $20,000.00. The verdicts were reduced by $5,000.00, the amount of the Settle compromise payments in each case and judgments were entered for each plaintiff in the sum of $15,000.00. On appeal to the Circuit Court of Kanawha County, the judgments were reversed with directions to enter judgment for the defendant, City of Elkins, in each case to which action this Court granted an appeal on December 5, 1966. In addition to the contract between the City of Elkins and Taylor which was introduced in evidence, the "West Virginia Safety Code for Building Construction", regulations of the West Virginia State Department of Labor, were introduced in evidence, the pertinent parts of which pertaining to excavation work are as follows:

"1.1 This Part on 'Excavation Work' provides for the protection of the public, employees, and

property during all excavation work in connection with building and trenching operations, including related sub-surface or below grade-level work such as the underpinning, shoring, and bracing of foundations, retaining walls, and the like.
"...

"1.8 The sides of every excavation four (4) feet or more in depth, where there is danger of slides or cave-ins, shall be supported by substantially braced sheet piling or shoring unless the sides of the excavation are sloped to the angle of repose of the material being excavated.
"...

"1.13 Excavated material shall not be placed on the ground surface nearer than eighteen (18) inches from the edge of the excavation."

The portions of such regulations specifically dealing with trenches are substantially the same.

Testimony was introduced on the trial of the case to the following effect: In the course of construction the contractor had encountered different types of soil in varying parts of the city. At the point where the cave-in occurred witnesses for the plaintiff described the soil as "soapstone" while witnesses for the defendant identified it as "hard shale". The propensities of soapstone and hard shale vary in their stability. Mr. Webb, the inspector employed by the city, was directly concerned with the depth and grade of the ditch and the material used. While he had made requests that a metal cage or other shoring be used, both before and after the cave-in involved herein, the record is not clear as to whether these requests were made for the purpose of safety of the men working or to insure his ability to observe that the work was being done properly. He did not request any cage or shoring at the site of the cave-in and no safety precautions were taken.

Plaintiffs, in their assignment of error in this Court, contend that the circuit court was without jurisdiction

to hear and decide the appeal from the trial court for the reason that no order filing the petition for appeal was ever entered by the judge of the circuit court. This assignment we find to be without merit. Code, 58-4-6, as amended, reads in part as follows: ''Such petition, together with a copy thereof, shall be first filed in the office of the clerk of the court of limited jurisdiction wherein the judgment, decree or order complained of was entered, and such clerk, retaining in his office the copy of such petition, shall, as soon as may be, transmit to the clerk of the circuit court the original, together with the record or so much of the case . . . as will enable the court or judge to whom the petition is to be presented properly to decide on such petition . . . .'' The record discloses that this procedure was fully complied with.

The learned intermediate appellate judge determined, and correctly so, that the relationship between the City of Elkins and Taylor was that of employer or contractee and independent contractor. The general rule is that where one person has contracted with a competent person to do work, not in itself unlawful or intrinsically dangerous in character, and who exercises no supervision or control over the work contracted for, such person is not liable for the negligence of such independent contractor or his servants in the performance of the work. *Law v. Phillips,* 136 W. Va. 761, 68 S. E. 2d 452, 33 A.L.R. 75. This general rule is subject to certain well defined exceptions such as where the undertaking is particularly hazardous; where the employer interferes with the conduct of the work; where the injury is the direct or natural result of the work; or where the law imposes a special duty. 9 M.J., Independent Contractors, §§ 12-18; 27 Am. Jur., Independent Contractors, § 27, et seq. None of these exceptions, with the possible exception of the last mentioned, is pertinent here. But it has also been held that ''An owner of property must exercise reasonable care for the safety of an employee of an independent con-

tractor who is engaged in the discharge of duties on the premises in pursuance of his contract with the owner." Syl., Pt. 1, *Roberts v. Kelly Axe & Tool Co.,* 107 W. Va. 236, 104 S. E. 283. On this appeal counsel for plaintiffs, in brief and argument, concede the correctness of the circuit court's determination as to the nature of the relationship between the City of Elkins and Taylor and the principles of law applicable thereto, but contend that notwithstanding such relationship the City of Elkins, nevertheless, had both a common law and statutory duty to provide plaintiffs' decedents with a safe place to work. Thus we are presented with the sole question for our determination.

In the *Roberts* case, above cited, Roberts was an employee of an independent contractor engaged in the erection of six smokestacks along the side of a building of the defendant's plant. The evidence showed that two smokestacks had been erected by the contractor previous to the accident by requiring his employees to remove windows in the building and, after bracing themselves on an overhead craneway, attach a guy rope to a steel beam for the purpose of assistance in the erection of the smokestacks. Plaintiff, in the erection of the third smokestack, was required to do the same and was braced on the crane track when the crane was moved along the craneway crushing him against the beam. The Court noted that the "removal of the windows, the tying of the ropes inside of the windows and the presence of the workmen in placing the ropes there, and the presence of the ropes in that position for hours after they had been so placed, all in open view, were such conspicuous facts as to give notice to the defendant's workmen that while the work of the erection of the smokestacks was in progress, men were apt to be in the immediate proximity of the crane track on the north side of the building and that consequently the crane ought not to be moved without reasonable precaution being exercised for the safety of the erecting contractor's workmen." The rule announced in the *Roberts* case as to the duty of the

employer to furnish an independent contractor a safe place to work is well founded in reason. However, this rule is subject to an exception where the conditions of the place of work are constantly changing as the work progresses. 35 Am. Jur., Master and Servant, § 187.

The evidence in the instant case shows that the soil conditions encountered throughout the city in the course of the work varied greatly. Therefore, the case falls within the exception to the rule of the *Roberts* case, and we find that under the circumstances there was no common law duty on the part of the City of Elkins the breach of which resulted in the deaths of plaintiffs' decedents.

Code, 21-3-1, as amended, provides in part:

"Every *employer* shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees: . . .

"Every *employer and* every *owner* of a place of employment, place of public assembly, or a public building, now or hereafter constructed, shall so construct, repair and maintain the same as to render it reasonably safe.

". . .

"To carry out the provisions of this chapter the commissioner of labor shall have the power to investigate and prescribe that reasonable safety devices, safeguards, or other means of protection be adopted for the prevention of accidents in every employment or place of employment, and to make, modify, repeal, and enforce reasonable general orders, applicable to either *employers* or employees, or both, for the prevention of accidents." (Italics supplied.)

Under the authority of this section the commissioner of labor promulgated the regulations heretofore quoted and which plaintiffs contend imposed a non-delegable statutory duty upon the City of Elkins to see that Taylor took proper precautions for the safety of his employees. Without attempting to reconcile any discrepancy, if there be one, between the italicized words above, we are of opinion that the statute and regulations are not applicable in the premises as regards the City of Elkins since such statutes are intended to apply "only to that member of the class enumerated who was engaged in the work designated at the time when the injury occurred." 57 C.J.S., Master and Servant, § 600; *Beasley v. Board,* 173 Okla. 355, 48 P. 2d 299.

The plaintiffs place much reliance for their contention upon the case of *Quinones v. Township of Upper Moreland,* 293 F. 2d 237. In that case plaintiff's decedent was an employee of an independent contractor engaged in a sewer construction project in behalf of the township. Plaintiff's decedent, Quinones, was killed when the walls of a trench twenty-five feet deep and four or five feet wide collapsed. The trench was not shored as required by the Pennsylvania statute and pertinent regulations and the absence of shoring was the proximate cause of decedent's death. The contract of the independent contractor contained, as here, an indemnity provision and the requirement as to the observance of all laws. The contract also provided that "trenches shall, at all times, be properly and adequately sheeted and braced to prevent *accidents*" (Italics supplied.) In view of the provisions of the contract the trial court, whose opinion was reported in 187 F. Supp. 260, submitted to the jury the question of whether or not the township retained sufficient control over the work to make it responsible to provide the shoring. The jury found in the affirmative and returned a verdict in favor of plaintiff, which action was affirmed on appeal, the appellate court stating "that there was ample basis for the jury's fact-finding that Township (1) had 'retained control'

in the performance of McCabe's contract, and (2) was negligent in not having required McCabe to shore the trench in conformity with Pennsylvania law and its Regulations for Trenches and Excavations."

The contract in the instant case consists of approximately forty pages, the pertinent parts of which concerning any retention of control by the City of Elkins, with one exception, having been heretofore quoted. An over-all reading of the contract, and particularly the provisions quoted, shows unambiguously that the City of Elkins retained control and the right to have an inspector on the premises only to insure that the grade, direction, material and workmanship complied with specifications of the contract. The right granted to the inspector to stop the work was merely an adjunct to such rights in order to compel compliance on the part of the contractor to the end that upon completion of the project the City of Elkins would have a workable system of the quality contracted for. None of the provisions mentioned, when taken in context, grant to the city the right to control in any manner the method of doing the work or to enforce or require any safety precautions. In fact the contract specifically negatives any such retention of control by providing that the inspector shall in no case act as foreman or interfere with the management of the work, and the testimony of Webb that on prior occasions he had requested, and been granted, safety cages in no way alters the over-all situation. One possible exception mentioned above and analagous to the contract in the *Quinones* case is the provision that "All tunneling shall be done so as to protect the workmen engaged and also protect the surface from subsidence and according to the permits issued by railroads or State Road Commission for said construction. Method of tunneling must be approved by these agencies, and the Engineer before work is started on this part of the project." If the deaths herein were the result of tunneling operations our conclusion might well be the opposite, but, suffice to say, the deaths, however lamentable by all, occurred

in open trenches over which the City of Elkins had no control.

Therefore, we hold that under the circumstances in the instant case there was no duty owed by the City of Elkins, either common law or statutory, to the plaintiffs' decedents and the judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*

CAPLAN, JUDGE, dissenting:

Respectfully, I dissent from the Court's decision as expressed in its opinion. My disagreement is not with the principles of law expressed in that opinion but rather with the application of the law to the facts as revealed by the record.

That the subject transaction between the City of Elkins and E. A. Taylor and Sons, Inc. constituted a relationship of employer or owner and independent contractor has not been disputed by the parties; nor do I here dispute the existence of such relationship. Undoubtedly the contractor enjoyed general freedom in the construction of the sewer. However, this freedom was not total and complete, as acknowledged by the majority which said: "An over-all reading of the contract, and particularly the provisions quoted, shows unambiguously that the City of Elkins retained control and the right to have an inspector on the premises only to insure that the grade, direction, material and workmanship complied with specifications of the contract."

It is my belief that, by reason of the language of the contract, the control retained by the City of Elkins extended beyond the mere physical specifications of the sewer construction and also covered consideration of safety of the workmen. My interpretation of the contract differs from that of the majority. The inspector, an employee of the City of Elkins, in my opinion, had greater authority. The contract provided

on page 16 thereof as follows: "In case of any dispute arising between the contractor and the Inspector as to materials furnished or the *manner of performing the work,* the Inspector shall have the authority to reject materials or suspend the work until the question at issue can be referred to and decided by the engineer." (Italics supplied.) The engineer, too, was an employee of the City. On pages 17 and 18 of the contract the engineer was authorized to suspend the work in whole or in part due to conditions considered unfavorable for the suitable prosecution of the work.

The contract provided that "Precaution shall be exercised at all times for the protection of persons (including employees) and property." It was further provided therein that the contractor shall comply with "all Federal, State, Local and Municipal laws, ordinances, rules and regulations *in any manner* affecting the work ***." (Italics supplied.) Pursuant to the authority granted in Code, 1931, 21-3, as amended, the West Virginia Department of Labor promulgated a safety code for construction, one section of which provides:

"The sides of every excavation four (4) feet deep or more in depth, where there is danger of slides or cave-ins, shall be supported by substantially braced sheet piling or shoring unless the sides of the excavation are sloped to the angle of repose of the material being excavated."

Other sections of that code indicated a concern for safety where excavation work was involved. It occurs to me that these provisions of the contract show a definite concern by the City of Elkins for the safety of the workers and when it retained control to the extent of being able to suspend operations due to the unsatisfactory "manner of performing the work" or by reason of "other conditions as are considered unfavorable for the suitable prosecution of the work," such concern with safe conditions of work was made meaningful.

The "manner of performing the work," in my opinion, does not, as related by the majority, refer only to obtaining a satisfactory complete and workable sewer system. It relates also to the compliance with all laws, rules and regulations pertaining to the safety of employees. In other words, if the contractor failed to comply with acknowledged safety regulations, the city, through its employees, the inspector and engineer, could suspend operations. If this were not the city's intention and admitted obligation, what was the need for an indemnification clause? After providing for the observance of and compliance with all laws, as set out above, the contract continued:

"*** and shall indemnify and save harmless the Owner and all of its officers, agents and servants against any claim or liability arising from or based on the violation of any such law, ordinance, rule, regulation, order or decree, whether such violations be by the contractor, or any subcontractor, or any of their agents and/or employees."

The city obviously recognized its duties and responsibilities in relation to injuries caused by noncompliance with the aforementioned laws, rules and regulations.

I do not believe that the city was interested only in getting value for money expended. By the provisions of the contract it retained control of the project to the extent that it could have insisted that the work was done safely. The safety precautions demanded by regulations which had the force of law were ignored, resulting in injuries which caused the death of three workmen. It was the city's obligation to see that such safety precautions were taken or to suspend the job until they were. I, therefore, disagree with the application of the law stated in Syllabus No. 1 of the Court's opinion, believing that the City of Elkins did have the authority to exercise meaningful supervision and control over this project in relation to the safety of the workmen.

The case of *Quinones v. Township of Upper Moreland*, 293 F. 2d 237, presents a factual situation, including a contract between a municipality and a contractor, very similar to the instant case. Therein, as noted in the majority opinion, the court affirmed the jury's fact-finding that the Township had retained control in the performance of the contract and was negligent in not having required the contractor to shore the trench in conformity with Pennsylvania law relative to regulation of trenches and excavations. I am in accord with the court's decision in that case and with the principles expressed in its opinion.

In view of the foregoing it is my opinion that the failure of the City of Elkins to perform its duty to see that the work was done in compliance with recognized safety regulations constituted negligence. Therefore, I would reverse the judgment of the Circuit Court of Kanawha County.