**Samuel Dale SUMMERS and Mertie Irene Summers, his wife, Appellees,**

v.

**CROWN CONSTRUCTION COMPANY, a corporation, Appellant.**

**No. 71–1463.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1971.

Decided Jan. 12, 1972.

George I. Buckler, Pittsburgh, Pa. (Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., and Russell L. Furbee, Herschel Rose, James D. Nash, Jr., and Furbee, Amos, Webb & Critchfield, Fairmont, W. Va., on brief), for appellant.

Herbert G. Underwood, Clarksburg, W. Va. (Eugene R. Hoyer, Charleston, W. Va., Willis O. Shay, and Steptoe &

Johnson, Clarksburg, W. Va., on brief), for appellees.

Before CRAVEN, BUTZNER and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

■ This appeal questions the liability under West Virginia law of a general building contractor to an independent contractor's employee who was injured by a defective crane owned and operated by the independent contractor. The district court entered judgment on the jury's verdict against the general contractor. We affirm because the accident resulted in part from the failure of the general contractor to exercise the broad control it had retained over safety practices on the job.

Crown Construction Co., a general contractor and owner of a site near Fairmont, West Virginia, contracted with Kent Steel Co. to erect the steel framework of buildings for a shopping center. Kent, as an independent contractor, supplied all the equipment, labor, and supervision required to accomplish its phase of the project. It moved its power crane to the site for unloading, sorting, and hoisting steel into place on the buildings under construction. Over a period of several days the crane's boom slipped three times because of a defective clutch. On the third occasion

it dropped a load of steel, severely injuring Samuel Dale Summers, an ironworker employed by Kent.

The trial judge instructed the jury in substance that they should return a verdict against Crown if they found that it had learned of the crane's faulty condition in sufficient time before the accident to have corrected it; it had failed to take remedial action; and its failure was a proximate cause of Summers' injuries.[1] The jury's verdict, supported by ample evidence, established that Crown's job superintendent knew of the defective crane several days before Summers was injured and that he did nothing to have it repaired or replaced. Crown does not now dispute these facts, but it argues that as a matter of law it owed no duty to Summers to correct the defect or even to warn of the hazard. In support of its position it relies on the oft quoted rule, which is recognized in West Virginia, that an owner or general contractor is not liable for the negligence of an independent contractor that it has employed.[2]

■ So riddled is the rule insulating a general contractor from an independent contractor's negligence that one court has aptly noted: "Indeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions."[3] One

1. The trial judge charged the jury:
   "Therefore, if the jury shall find by a preponderance of the evidence that the crane in question was defective and had malfunctioned on occasions prior to the happening of the accident resulting in Summers' injuries, and if you shall further find by a preponderance of the evidence that Crown knew, or by the exercise of due care should have known, of the faulty condition of the crane in time to have either repaired the crane itself or have required Kent Steel to do so prior to the happening of the accident causing Summers' injuries, and it failed to do so, and if the jury shall further find by a preponderance of the evidence that such failure, if any, on the part of Crown was a proximate cause of Summers' injuries, then your verdict shall be for

the plaintiffs and against the defendant. . . ."
   The judge also charged on contributory negligence, and this issue is not raised on appeal.

2. Crown relies on a number of cases that apply this general rule. E. g., Texaco, Inc. v. Roscoe, 290 F.2d 389 (5th Cir. 1961); Iacono v. Frank & Frank Contracting Co., Inc., 259 N.Y. 377, 182 N.E. 23 (1932); Chenoweth v. Settle Engineers, Inc., 151 W.Va. 830, 156 S.E. 2d 297 (1967).

3. Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co., 201 Minn. 500, 277 N.W. 226, 228 (1937). The numerous exceptions West Virginia recognizes are discussed in Brown, Liability for the Torts of Independent Contractors in West Virginia, 55 W.Va.L.Rev. 216 (1953). See

well recognized exception is not, strictly speaking, based on vicarious responsibility. The general contractor may be liable for its own negligence if it retains control over any part of the work, and fails "to exercise reasonable care for the protection of others [or] . . . to put a stop to any unnecessarily dangerous practices of which he becomes informed. . . . "[4] The Supreme Court of Appeals of West Virginia has not had occasion to apply this exception, but the district judge was fully justified in believing that the Court approved it.

In Chenoweth v. Settle Engineers, Inc., 151 W.Va. 830, 156 S.E.2d 297 (1967), the Court absolved the city of Elkins from liability for injuries to an employee of an independent contractor arising from the negligence of the independent contractor employed to construct a sewer line. But pointedly the Court noted that the city did not retain any contractual right "to enforce or require any safety precautions." 156 S. E.2d at 302. One cannot read *Chenoweth* without reaching the firm conviction that had the city retained control over safety practices, it would have been liable for harm to an employee of the independent contractor caused by its own negligent failure to exercise its authority.

Here the facts require the imposition of liability that *Chenoweth* inferentially recognized. Although Crown and Kent did not execute a written contract, the extent of Crown's control over Kent's safe prosecution of the job is unequivocally established by the testimony of Crown's senior employees. Crown's general superintendent of construction and its superintendent of this project both testified that Crown's employees were under a duty to report "safety problems" caused by independent contractors to Crown's job superintendent. Crown's vice president in charge of construction, its general superintendent, and its job superintendent all attested to the authority of the job superintendent to ensure that an independent contractor corrected an unsafe situation or practice. Specifically, the evidence established that when Kent, or any other independent contractor, operated an unsafe machine on the job, Crown's superintendent had authority to require the independent contractor "to get it fixed to be in working order or . . . to take it off the job." Kent's president did not dispute that Crown retained this control.

Crown's retention of the right to prohibit Kent from doing its work in a dangerous manner clearly meets the standards of the Restatement[5] and the dictum in *Chenoweth*, 156 S.E.2d at 302. The district judge, therefore, properly concluded that West Virginia law imposed a duty on Crown to exercise reasonable care to prevent Kent's defective machinery from harming a business invitee on the building site. The judgment is affirmed.

---

generally 2 F. Harper & F. James, The Law of Torts § 26.11 (1956, Supp. 1968) ; W. Prosser, Law of Torts § 70 (3d ed. 1964) ; Restatement (Second) of Torts §§ 409–429 (1965).

4. W. Prosser, Law of Torts 481 (3d ed. 1964).

The Restatement (Second) of Torts § 414 (1965) states the exception as follows :

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

The comments to this section state :

"*b*. . . . [T]he principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself . . . ."

"*c*. . . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

5. *See* note 4 *supra*.