EARL HALL, *Administrator, etc.*

*v.*

NELLO TEER COMPANY, *a corporation*

(No. 13342)

Submitted January 29, 1974.     Decided March 12, 1974.

Bachmann, Hess, Bachmann & Garden, John B. Garden, R. Noel Foreman, Lester C. Hess, Jr., for appellant.

Schrader, Miller, Stamp & Recht, Arthur M. Recht, Madden & Hughes, G. Charles Hughes for appellee.

BERRY, JUSTICE:

This is an appeal instituted by Nello Teer Company, the defendant below and hereinafter referred to as the defendant, from a final judgment of the Circuit Court of Marshall County entered April 24, 1972 which overruled the defendant's motion to set aside the jury verdict and award it a new trial. The jury returned a verdict in favor of Earl Hall, the administrator of the estate of Gregory Hall, hereinafter referred to as the plaintiff, in the amount of $11,150.74 as a result of the plaintiff's action for wrongful death. This Court granted the defendant's appeal on March 5, 1973 and on January 29, 1974 the case was submitted for decision upon the arguments and briefs on behalf of the respective parties.

The defendant was a general contractor under a contract with the State Road Commission of West Virginia to relocate West Virginia Route 2 in Marshall County. As part of the contract, the defendant was required to "terrace" or "bench" the hillside to the east of the proposed highway. "Benching" is the process of cutting away the hillside at various intervals starting at the top and is used to prevent rock or dirt slides from blocking the highway.

The plaintiff's decedent was an employee of Stegman & Schellhase, Inc., which was an engineering firm employed by the defendant. It is undisputed that Stegman & Schellhase, Inc. was an independent contractor as far as its relationship with the defendant was concerned. The engineering firm was responsible for determining whether the defendant was performing the excavation in accordance with plans and specifications and for marking various places on the benches for blasting. The plaintiff's decedent, who was seventeen years of age at the time of his death, was hired by Stegman & Schellhase on August 11, 1966. The plaintiff's decedent was a rodman and was involved in the placing of construction layout stakes in the area of the new roadway and setting grade stakes in the area where the benches were being constructed. He had been warned by his supervisor of the danger of falling rocks while working at the base of the high walls which comprised the backs of the benches.

On October 6, 1966 the plaintiff's decedent was one of four employees of the engineering firm sent to the construction site to take various measurements. The plaintiff's decedent was working with a fellow employee, one Louis Wojcicki, on the second bench from the top. Their job was to place stakes in the appropriate locations on the benches so that the drilling rigs could come in later to drill holes for blasting. Wojcicki testified that shortly before the accident he was operating the survey transit about 40 or 50 feet west of the wall of the bench. The plaintiff's decedent was placing stakes and holding the level rod for elevation measurements at the base of the wall. Wojcicki testified he walked over to the base of the wall to assist the plaintiff's decedent in placing a stake in the ground with a small sledge hammer. After the stake was in place, Wojcicki stood up and began to turn to his right when a large rock, weighing approximately 4700 pounds, fell on both men, seriously injuring Wojcicki and killing plaintiff's decedent. The rock fell from the face of the wall at a point about 18 or 20 feet above the bench.

Albert Chieffalo, an employee of the defendant at the time of the accident, testified on behalf of the plaintiff that he had observed a large rock protruding three to four feet from the face of the wall on the second bench when he was working as a flagman near the place of the accident. However, Chieffalo also stated that he had not been working in the area of the accident for approximately 13 days prior to the accident. He testified that he considered this situation dangerous and had made a point to pass by the base of the wall at a safe distance. Chieffalo also testified that on one occasion he observed a front-end loader tap the rock three or four times and then drive away. Although Chieffalo considered the situation dangerous, he never informed anyone of the condition even though all employees of the defendant attended safety meetings every Monday and were encouraged to report any dangerous conditions on the work site. Chieffalo testified he felt that someone else would remedy this dangerous condition.

However, Wojcicki, the injured co-worker, testified he did not observe anything unusual about the face of the wall on the day of the accident. Paul Roberts, an employee of the State Road Commission, was sitting in a truck about 50 feet from the decedent and Wojcicki when the rock fell. He testified that a front-end loader was operating about 100 yards from him and two or three drilling rigs were operating about 100 feet away and were causing a considerable amount of vibration. He stated that he did not observe anything wrong with the face of the bench. However, Roberts testified he noticed that small pieces of coal or "fines" were falling on plaintiff's decedent while the decedent was working at the base of the wall. Roberts testified that Wojcicki, who was about 50 feet away from the wall at the transit, "hollered something at the Hall boy" and pointed above the plaintiff's decedent's head. The plaintiff's decedent looked up and went back to work. Roberts testified that shortly thereafter Wojcicki joined the plaintiff's decedent at the base of the wall. Roberts

testified the rock looked as if "it just busted through" the face of the wall.

Although Chieffalo also testified he had observed coal or sand sifting down from the face of the wall on various occasions some thirteen days prior to the accident, Wojcicki testified he had not noticed any "fines" at the base of the wall. John Schellhase, the supervisor of the crew from the engineering company, testified that he did not notice anything unusual about the face of the wall on the second bench as he went by it on the morning of the accident. Schellhase also testified as to the strata of the wall. He stated that the bottom layer was soft, gray, sandy shale followed by a layer of medium hard, gray shale. Above this was a layer of soft black coal followed by a layer of medium hard, dark gray shale limestone. This latter layer was the one from which the rock fell.

Charles C. Waller, the general superintendent on the job for the defendant, testified for the defendant that he inspected the walls several times a day checking for unsafe conditions and that he had not observed any rock protruding from the face of the wall on the second bench. He also stated that the men operating the front-end loaders or dozers had been instructed to knock down any loose rocks from the face of the walls if any were observed by the men.

Waller was asked on direct examination by counsel for the defendant what, in his opinion, based on his inspection of the scene, had caused the rock to fall. The court refused to allow Waller to answer this question after the opposing counsel objected. On proffer of testimony out of the presence of the jury, Waller stated that the rock had worked loose as a result of a mud seam behind the rock which was not observable. The defendant contends that Waller should have been allowed to tell the jury why, in his opinion, the rock fell, because Waller was qualified to give his opinion. However, this evidence was later allowed to go to the jury in another context.

Defendant further contends that under the facts of this case, it was entitled to a directed verdict either at the close of plaintiff's evidence or at the close of all the evidence. Furthermore, the defendant contends the court erred in giving plaintiff's instructions 1 and 2.

The principal contention of the defendant on this appeal is that it was error for the trial court to refuse to direct a verdict in favor of the defendant. Although there has been considerable confusion in the past with regard to the liability on the part of the owner of the premises or the general contractor in connection with injuries to an employee of an independent contractor, it now appears to be firmly established in the law that a general contractor or the employer of an independent contractor has the duty to exercise ordinary care for the safety of an employee of the independent contractor, and to furnish such employee a reasonably safe place in which to work. *Roberts v. Kelly Axe & Tool Co.*, 107 W.Va. 236, 148 S.E. 70; *Ferguson v. R. E. Ball & Co.*, 153 W.Va. 882, 173 S.E.2d 83; *Summers v. Crown Construction Company*, 453 F.2d 998. It was held in point 2 of the syllabus of the *Ferguson* case that: "An independent contractor who works on premises where his contract requires him to be is an invitee, and while thus engaged he is entitled to the protection of ordinary care on the part of the owner or occupier of the premises, and such invitee must be furnished a reasonably safe place in which to work."

The defendant cites the case of *Chenoweth v. Settle Engineers, Inc.*, 151 W.Va. 830, 156 S.E.2d 297, as authority to support his contention that a directed verdict should have been granted in favor of the defendant in the case at bar. In the *Chenoweth* case the City of Elkins retained no control over the work of the contractor and the Court held that because soil conditions varied greatly throughout the city where ditches were being dug and work conditions were constantly changing, the city was not liable for the death of the contractor's employee in the cave-in of a ditch. This case is clearly distinguished from

the instant case, because the defendant, the general contractor, retained control over the safety of the work being done on the entire work project involved, and there was no evidence of constantly changing conditions at the place the plaintiff's decedent was working. The evidence in the instant case is conflicting as to whether or not a dangerous situation existed which was known or should have been known by the defendant. A witness for the plaintiff, Albert Chieffalo, testified that some time before the accident he observed a rock at the place where the accident occurred protruding some three or four feet from the wall above the bench and that it constituted a dangerous situation. He did not report this condition to the defendant although the men held weekly safety meetings with regard to such matters. It is true that four witnesses for the defendant testified that they did not observe a rock protruding at the place of the accident; but this conflict in the evidence made the case one for jury determination. *Jones v. Riverside Bridge Co.,* 70 W.Va. 374, 73 S.E. 942; *French v. Sinkford,* 132 W.Va. 66, 54 S.E.2d 38; *Summers v. Crown Construction Company, supra.* It was held in point 2 of the syllabus of the *French* case that: "Where, in the trial of an action at law before a jury, the evidence is conflicting, it is the province of the jury to resolve the conflict, and its verdict thereon will not be disturbed unless believed to be plainly wrong." Point 4 of the syllabus of the case of *Young v. Ross,* 157 W.Va. 548, 202 S.E.2d 622, quotes the recent case of *Skeen v. C and G Corporation,* 155 W.Va. 547, 185 S.E.2d 493, in the following language: "It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed." It therefore appears the contention of the defendant that the trial court should have directed a verdict in its favor is not well taken.

The contention of the defendant that it was error for the trial court to refuse to allow the general

superintendent of the defendant to testify as an expert witness giving his opinion as to why the rock fell from the wall is also not well taken.

It would appear from the evidence that a proper foundation was not laid for the testimony of this witness. No questions were directed to this witness as to his knowledge of geology. The question of the qualifications of a witness to testify as an expert witness and give his opinion, rests in the discretion of the trial court, and its ruling on such matter will not ordinarily be disturbed unless it appears there has been an abuse of discretion by the trial court. 31 AM. JUR. 2d *Expert and Opinion Evidence* § 26. *Moore, Kelly & Reddish, Inc. v. Shannondale, Inc.,* 152 W.Va. 549, 165 S.E.2d 113; *Overton v. Fields,* 145 W.Va. 797, 117 S.E.2d 598. It was held in point 5 of the syllabus of the *Overton* case that: "Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused."

The contention that it was error for the trial court to give instructions 1 and 2 offered by the plaintiff over the objection of the defendant will not be considered by this Court, because the objection is not germane to the instructions and does not specifically point out any error in the instructions offered. The objection to these instructions, which is the same in each case, was as follows: "I don't think it correctly states the law. Our position is that Nello Teer was not under a duty to notify an invitee such as Hall of any defect or danger which Hall, himself, should have known." Neither instruction mentioned any duty on the part of the defendant to warn the plaintiff's decedent of any danger or defect.

It has been repeatedly held by this Court that only specific grounds of objection to an instruction will be considered by it. *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736; *Shaw v. Perfetti,* 147 W.Va. 87, 125 S.E.2d 778; *Fortner v. Napier,* 153 W.Va. 143, 168

S.E.2d 737; *Lambert v. Great Atlantic & Pacific Tea Co.,* 155 W.Va. 397, 184 S.E.2d 118. Rule 51, R.C.P., also requires such specific objection and the pertinent part relative thereto reads as follows: " * * * No party may assign as error the giving or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly, as to any given instruction, the matter to which he objects and the grounds of his objection; * * * ."

It was held in point 2 of the syllabus of the *Lambert* case that: "The general rule is that no party may assign as error the giving of or the refusal to give an instruction unless he objects thereto before the arguments to the jury are begun, stating distinctly the matter to which he objects and the grounds of his objections and ordinarily this Court, in the exercise of its appellate jurisdiction, will consider only objections which have been made in this manner."

For the reasons stated herein, the judgment of the Circuit Court of Marshall County is affirmed.

*Affirmed.*