**Gregory Douglas KEIFFER, Plaintiff,**

v.

**EXXON CORPORATION, Defendant.**

**Civ. A. No. A:86–0018.**

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Oct. 31, 1986.

Harry C. Taylor, II, Robert N. Bland, Charleston, W.Va., for plaintiff.

Gerard R. Stowers, Bowles, McDavid, Graff & Love, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

On September 12, 1986, this Court denied the Defendant's motion for summary judgment. Since that time, the Court has had cause to reflect upon the holding of the United States Supreme Court in *Celotex Corporation v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon renewed consideration of the *Celotex* case, the Court determines that it is both appropriate and necessary to reconsider the Defendant's motion for summary judgment, filed July 10, 1986. After reconsideration, considering the Defendant's motion and reply, and the Plaintiff's response, the Court concludes that the Defendant's motion for summary judgment should be granted, and that the Plaintiff's claim should be denied.

On December 9, 1985, Gregory Douglas Keiffer instituted this action against Defendant Exxon Corporation in the Circuit Court of Jackson County. On January 3, 1986, Exxon removed this proceeding from the Circuit Court of Jackson County to this Court on the basis of diversity of citizenship. Keiffer seeks damages for personal injuries resulting from the explosion of a furnace, which he was attempting to repair, on January 19, 1984, at an Exxon service station located in Jackson County, West Virginia. At the time of his injury,

Keiffer was an employee of Campbell Construction Company, which from time to time performed repair and maintenance work for Exxon. Exxon owned the station where the accident occurred, and the real estate upon which it was located. At the time of the incident, the station was vacant and unleased.

Exxon employed Campbell Construction Company to perform repairs at the station where Keiffer was injured. Exhibits 1, 2 and 3 to Keiffer's deposition are invoices and itemizations of labor performed and materials used by Campbell Construction in repairing the station. Keiffer is listed on the invoices as a mechanic, and Campbell billed $15.00 an hour for his work. Keiffer's deposition, taken February 18, 1986, demonstrates that Keiffer had obtained from his employer Campbell a job ticket which indicated that the furnace located at the vacant gas station owned by Exxon was out of order. Keiffer had been trained, at a North Carolina manufacturer's school, in the maintenance of furnaces, specifically electronic pumps. At the vacant gas station, Keiffer examined the furnace and then disassembled the compressor because it did not function. Keiffer cleaned it and put the compressor back in operation. In addition to working on the compressor of the furnace, Keiffer installed new electrodes in the furnace and a thermostat on the furnace.

Keiffer was alone at the station from 4:00 p.m. to 8:30 p.m. working on the furnace. Just prior to the accident, and after other employees had left the premises, Keiffer took the compressor apart to reinstall the electrodes and other components into the furnace. At this time he cleaned carbon deposits out of the furnace and then cleaned the electric eye, a safety mechanism inside the furnace. Prior to the explosion, the furnace was placed in service. Keiffer specifically recalls checking the furnace's operation during the daylight hours by going outside the station and observing the smoke coming from the chimney. After the furnace operated a few hours, while Keiffer was standing on a six or eight foot aluminum ladder working on an electrical conduction box, the furnace exploded. As a result of the explosion, Keiffer was knocked from the ladder and injured his wrist and knee. Keiffer described the explosion as similar "to the sound of a shotgun, not quite as loud."

Keiffer contends that Exxon violated its duty to maintain its business location in a reasonably safe condition for business invitees, including him. Keiffer further alleges, in his memorandum in opposition to the Defendant's motion for summary judgment, that his expert will show that carbon deposits on the furnace caused pressure to build which triggered the explosion. Keiffer further contends in his memorandum that he was too inexperienced to perform the repair and that Exxon was negligent in permitting him to work on its furnace.

Premises owners are charged with a duty to exercise ordinary care to keep the premises safe for persons lawfully on those premises. *Kesner v. Trenton*, 158 W.Va. 997, 216 S.E.2d 880, 885 (1975). A corollary to this rule is that employers of independent contractors or employees are under a duty to provide a safe place for the independent contractor or his employee to work. *Roberts v. Kelly Axe and Tool Co.*, 107 W.Va. 236, 241, 148 S.E. 70 (1929). Notably, however, this is not a case charging Exxon to be strictly liable for the conduct of ultrahazardous activity under *Peneschi v. National Steel Co.*, 295 S.E.2d 1 (W.Va.1982); rather, the Plaintiff's cause of action is based wholly upon negligence.

Critical to determining whether Exxon could be held liable under the facts as they now appear is whether Exxon violated its duty of care. The duty of care of a premises owner where an independent contractor is performing work and the conditions of the premises are constantly changing has been the subject of three West Virginia Supreme Court opinions. In *Chenoweth v. Settle Engineers, Inc.*, 151 W.Va. 830, 156 S.E.2d 297 (1967), the Supreme Court of Appeals of West Virginia held that a premises owner is not liable for hazardous conditions resulting from changing conditions

occasioned by the performance of work by an independent contractor:

"The general rule is that where one person has contracted with a competent person to do work, not in itself unlawful or intrinsically dangerous in character, and who exercises no supervision or control over the work contracted for, such person is not liable for the negligence of such independent contractor or his servants in the performance of the work." *syllabus* pt. 2.

*Id.*, at 835, 156 S.E.2d 297. Later, this holding of *Chenoweth* was distinguished in the case *Hall v. Nello Tear Co.*, 157 W.Va. 582, 203 S.E.2d 145 (1974). The *Hall* case distinguished *Chenoweth* applicability on the findings that the defendant general contractor there retained control over the safety of the work being performed and that there was no evidence of changing conditions. In *Sanders v. Georgia Pacific Corporation*, 159 W.Va. 621, 225 S.E.2d 218 (1976), the West Virginia Court expressly abandoned *syllabus* point 2 of *Chenoweth* and held that the duty to provide a safe place to work is not changed by the intercession of an independent contractor and constantly changing conditions of the premises. *Sanders*, 225 S.E.2d at 222. The Court, however, conceded that an exception obtained "in those rare and unusual instances where it can be shown that the one asserting the defense of independent contractor neither knew nor in the exercise of reasonable care, skill and diligence should have known of such changing conditions." *Sanders*, 225 S.E.2d at 222. Also critical to the *Sanders* holding was the broad supervisory authority available to and exercised by the property owner. *Sanders*, 225 S.E.2d at 223.

By contrast, Keiffer was selected by Campbell Construction to perform repairs upon the Exxon furnace. From all appearances, Keiffer was represented as a person capable of doing the work for which he was employed. His time was billed as that of a mechanic, he used the tools and materials of his own employer and not that of Exxon, and Exxon assumed no supervisory control over the manner in which his work was done. Keiffer undertook to repair the furnace as he had been trained to do by Campbell or others, and Exxon thus was entitled to rely on Campbell Construction's implicit representation that its employees were competent to perform the tasks which Campbell had them doing. Exxon was not required to protect Keiffer from himself. Critical to the outcome, Plaintiff offered nothing to show that Exxon knew or, in the exercise of reasonable care, skill and diligence, should have known of the condition of the repaired furnace unit immediately prior to the explosion. Accordingly, Exxon owed no actionable duty to Plaintiff on these undisputed facts.

The Defendant having demonstrated that there exists no genuine issue of fact, and the Plaintiff having failed to rebut this showing as required in *Rule* 56(c) and (e), Federal Rules of Civil Procedure, the Court GRANTS the Defendant's motion for summary judgment.