ALLEN M. SANDERS

*v.*

GEORGIA-PACIFIC CORP., *and* RUPERT STURGILL

(No. 13622)

Decided June 1, 1976.

622

*Marshall & St. Clair, James W. St. Clair* for appellant.

*Campbell, Woods, Bagley, Emerson, McNeer & Herndon, C. F. Bagley and R. H. Burns, Jr.,* for appellee Georgia-Pacific Corp.

*Smith & Rumora, W. Graham Smith, Jr.,* for appellee Rupert Sturgill.

WILSON, JUSTICE:

In this negligence action to recover damages for personal injuries, the plaintiff, Allen M. Sanders, appeals from an order of the Circuit Court of Mingo County setting aside a jury verdict in favor of the plaintiff against both defendants, Georgia-Pacific Corporation and Rupert Sturgill, in the total sum of $50,000.00.

In setting the verdict aside, the trial court ruled that it had erred in failing to grant Georgia-Pacific's motions for a directed verdict made both at the close of the plaintiff's evidence and at the close of all the evidence. It further ruled that such error was prejudicial to both defendants and accordingly awarded a new trial to both of them.

The trial court was apparently of the opinion that the evidence was sufficient to impose liability for negligence on the defendant Sturgill. At all stages during and after the trial, the trial court rejected all efforts by Sturgill to challenge the sufficiency of the evidence for that purpose. A new trial was awarded to Sturgill solely on the

ground that he had been prejudiced by the court's error in failing to direct a verdict for Georgia-Pacific.

The trial court's ruling with reference to Georgia-Pacific is not clear. Apparently, the trial court was of the opinion that Sturgill was, as a matter of law, an independent contractor whose negligence could not be imputed to Georgia-Pacific and was further of the opinion that the plaintiff had failed to present evidence from which a jury could have found that Georgia-Pacific was otherwise negligent. On this appeal, we are required merely to determine whether, under the evidence, the trial court would have been justified in taking the case from the jury as to Georgia-Pacific's defenses of independent contractor and no primary negligence.

The sharp conflict in the evidence on behalf of the plaintiff and on behalf of Georgia-Pacific significantly affects our resolution of the controlling questions. The evidence must be interpreted in the light most favorable to the plaintiff with due regard for every reasonable inference therefrom. *See, Smith v. Rude Carrier Corp.,* 151 W. Va. 322, 334, 151 S.E.2d 738, 745 (1966). When so interpreted, the evidence justifies the following summary of material facts.

The plaintiff suffered a fracture of his back and was otherwise injured while engaged in loading logs for Georgia-Pacific.

For the purpose of this action, the plaintiff was not an employee of either Georgia-Pacific or Sturgill. He owned a truck which had been purchased with the help of Georgia-Pacific, had been modified in accordance with instructions given by Georgia-Pacific, and was used by him to haul logs for Georgia-Pacific. He was paid for this work by Georgia-Pacific on some basis not clearly defined in the record.

At the time of the accident, the plaintiff's truck was being loaded with logs by means of a crane whose cable was equipped with a pair of tongs similar to ordinary ice tongs. This work was being done on land owned and

controlled by Georgia-Pacific; and with a crane owned and furnished by Georgia-Pacific and brought to the job site by Georgia-Pacific. Georgia-Pacific was responsible for keeping the crane in operating condition and did in fact keep it in operating condition to the extent of replacing parts, paying for repairs, performing routine maintenance, and making periodic inspections.

The crane in question had been placed at the loading site by Sturgill and at the time of the accident was being operated by a regular employee of Sturgill.

Georgia-Pacific, through its employee, Kocher, and at least one other employee, supervised the entire Georgia-Pacific logging operation on a daily basis, was in charge of and oversaw all operations including the loading operations, and generally supervised trucking contractors such as the plaintiff.

It was a common practice for one such as the plaintiff to disengage the tongs from the logs after they had been loaded onto the truck and then, after the final log had been so loaded, to grasp the tongs for the purpose of being transported to the ground by the crane operator. This is exactly what the plaintiff was doing at the time of the accident. The crane operator had raised him to a point six inches to one foot above the last log when, for reasons not fully apparent from the record, the logs began to roll off the truck. Then, the crane operator jerked the tongs causing the plaintiff to lose his grasp and to fall into the midst of the tumbling logs thereby inflicting the injuries of which the plaintiff complained.

The crane had been placed so far below the level of plaintiff's truck that the operator of the crane did not have a clear view of the plaintiff's position and could not tell that the plaintiff was above the level of the rolling logs in a position of safety.

Georgia-Pacific not only generally disputes the above-outlined factual account, but specifically says that Sturgill was an independent contractor and that the negligence, if any, of Sturgill, either in the placement of the

crane or in the operation of it by his employee, cannot be imputed to Georgia-Pacific.

In support of the contention that Sturgill was an independent contractor, the written contract between Sturgill and Georgia-Pacific, together with a written amendment and modification thereof, were introduced into evidence, and there was testimony from Sturgill that, apart from those documents, there was a separate agreement, presumably oral, with Georgia-Pacific which was just an extension of the written agreements under which he was loading and hauling logs for Georgia-Pacific.

The defense of "independent contractor" is one which defendants have long favored as a means of denying liability for acts which are done by those whom they neither control nor have a right to control. However, over the years, the defense has proved to be a slender reed and one which the courts have found difficult to apply.[1]

This Court at an early time discussed the doctrine of the non-liability of one for the negligence of another who was an independent contractor and in *Carrico v. West Virginia Cent. & P. R'y Co.*, 39 W. Va. 86, 92, 19 S.E. 571, 573 (1894), stated the rule and test of its applicability, as follows:

> "The general rule may be stated to be that one, who has contracted with a fit and competent person exercising an independent employment to do work not in itself dangerous to others or unlawful, according to the contractor's own method, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his subcontractor or servants committed in the prosecution of his work.

---

[1]For an interesting discussion of the status of the rule: *See* Brown, *Liability for the Torts of Independent Contractors in West Virginia*, 55 W. Va. L. Rev. 216 (1953).

"Nice questions arise in the application of the rule. Who is an independent contractor? Or rather, is he an independent contractor, or only an agent or representative of the employer in the particular case?"

In the intervening years, the general rule has remained intact, but its efficacy as a defense has been so frequently questioned as to lead the Court of Appeals in *Summers v. Crown Construction Company*, 453 F.2d 998, 999 (4th Cir. 1972), to state:

"So riddled is the rule insulating a general contractor from an independent contractor's negligence that one court has aptly noted: 'Indeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions.' " [Citing in Footnote 3: *Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co.*, 201 Minn. 500, 277 N.W. 226, 228 (1937).]

This court, like other courts, has established its catalog of "exceptions" to the general rule. Many of these "exceptions" use different words to convey the same meaning. All, however, are merely calculated to narrow the scope of the independent contractor defense and prevent its abuse as a mere convenient device for the evasion of responsibility and liability. For example, this Court has stated that the rule does not apply to relieve one who has employed an independent contractor from liability for the breach of a duty imposed upon him by law in behalf of the safety of the public, *Carrico v. West Virginia Cent. & P. R'y Co.*, *supra;* or for the breach of nonassignable duty, *Vickers v. Kanawha & West Virginia Railroad Co.*, 64 W. Va. 474, 63 S.E. 367 (1908); or for the breach of an inescapable duty owed the public, *Sommerville v. The Pennsylvania Railroad Co.*, 151 W. Va. 709, 155 S.E.2d 865 (1967).

Similarly, the rule does not apply to relieve one who has employed an independent contractor from liability for an injury if the injury might have been anticipated as a direct or probable consequence of the performance

of the work if reasonable care is omitted, *Trump v. Blue-field Water Works and Improvement Co.*, 99 W. Va. 425, 129 S.E. 309 (1925); or if the work is intrinsically dangerous in character, *Law v. Phillips*, 136 W. Va. 761, 68 S.E.2d 452 (1952); or if a public authority has granted a right to engage in dangerous activities which right is denied the general public, *Griffith v. George Transfer and Rigging, Inc.*, W. Va., 201 S.E.2d 281 (1973).

Other cases reject the independent contractor defense by reason of the law's imposition of a continuing duty to exercise reasonable care or to put a stop to any unnecessary or dangerous practices. *See, Hall v. Nello Teer Company*, W. Va., 203 S.E.2d 145 (1974). *See also, Ferguson v. R. E. Ball and Co.*, 153 W. Va. 882, 173 S.E.2d 83 (1970); and *Roberts v. Kelly Axe & Tool Co.*, 107 W. Va. 236, 148 S.E. 70 (1929).

Perhaps courts and litigants have become so concerned with determining whether a given case falls within an "exception" or should be a vehicle for the creation of some additional "exception" that they have tended to overlook what the rule is, the reason for it and what is required to gain its protection.

It is always incumbent upon one who asserts vicarious liability to make a prima facie showing of the existence of the relation of master and servant or principal and agent or employer and employee. However, once a prima facie showing has been made, it is incumbent upon one who would defeat liability on the basis of an independent contractor relationship to show such fact. *Kirkhart v. United Fuel Gas Co.*, 86 W. Va. 79, 102 S.E. 806 (1920).

If there is a conflict in the evidence, and there is sufficient evidence to support a finding of the jury, the determination of whether one is an independent contractor is a question for the jury. *Anderson v. Tug River Coal and Coke Co.*, 59 W. Va. 301, 53 S.E. 713 (1906).

However, no single item of proof is generally dispositive of the issue. Many facets of the alleged relationship are significant.

The only general test of the existence of the relationship is whether the one claiming the existence of the independent contractor relationship either controls or has the right to control the work.

In this case, Georgia-Pacific seems to infer that the controlling case is *Chenoweth v. Settle Engineers,* 151 W. Va. 830, 156 S.E.2d 297 (1967). Georgia-Pacific seems to interpret the *Chenoweth* case as establishing some new or different or less stringent standards both for the definition of its affirmative duty to supply a safe place to work and for the establishment of the relationship of independent contractor.

We disagree. In *Chenoweth,* this Court was required to determine the extent of control which had been retained over the alleged independent contractor under the peculiar and unusual facts of that case. *Chenoweth* does not stand for the proposition that there has been any change in the law of this State either as to the duty of supplying a safe place to work or in the determination of the independent contractor relationship. Any doubts which may have heretofore existed as to the scope of the holding in *Chenoweth* have been clearly laid to rest by this Court in *Hall v. Nello Teer Company, supra.* We here specifically disapprove Syllabus No. 2 of the *Chenoweth* case and state that we will not apply it even though the conditions of the place of work are constantly changing as the work progresses except in those rare and unusual instances where it can be shown that the one asserting the defense of independent contractor neither knew nor in the exercise of reasonable care, skill and diligence should have known of such changing conditions. In most cases, the very doing of work causes changes in conditions, and that fact can no longer be used to escape an otherwise clearly established duty.

Although the evidence in this case showed a disputed relationship between Georgia-Pacific and Sturgill, it was sufficient to support a finding by the jury that Georgia-Pacific had not only the right to control Sturgill and his

employees but did in fact exercise an actual control. A clear jury question on this issue was presented.

We do not rest our decision solely on the proposition that the negligence of Sturgill could be imputed to Georgia-Pacific.

The owner or occupier of premises owes to an invitee such as a non-employee workman or an independent contractor the duty of providing him with a reasonably safe place in which to work and has the further duty to exercise ordinary care for the safety of such persons. *See Hall v. Nello Teer Company, supra; Ferguson v. R. E. Ball and Co., supra;* and *Roberts v. Kelly Axe & Tool Co., supra.*

The plaintiff in this case was certainly an invitee workman on the premises of Georgia-Pacific. Georgia-Pacific owed him the duty of ordinary care as well as the duty to provide him with a safe place to work. This was a direct obligation of Georgia-Pacific on land owned and controlled by it, on a job site picked by it, and using equipment owned and maintained by it. There was evidence from which the jury could have found that Georgia-Pacific knew or should have known that the crane was placed in a manner which prevented the operator thereof from having a clear view of persons including the plaintiff who were known or should have been known by Georgia-Pacific to be working in and about the area in which this accident occurred. From these facts, the jury could have found that Georgia-Pacific, in permitting such conditions to exist without correction, failed to exercise ordinary care for the safety of the plaintiff or failed to provide him with a safe place to work.

The evidence was clearly sufficient to establish the negligence of Georgia-Pacific either directly or vicariously.

Although an appellate court accords great respect to the ruling of a trial court in granting or denying a motion for a new trial, it will reverse the trial court

when it is clear that the trial court has acted under some legal misapprehension. *See, Kesner v. Trenton,* ____ W. Va. ____, 216 S.E.2d 880 (1975); and *Young v. Duffield,* 152 W. Va. 283, 162 S.E.2d 285 (1968).

For the reasons hereinabove set forth, we find that the trial court erred in setting aside the jury verdict, and we reverse and remand the case with instructions to the Circuit Court of Mingo County to enter judgment in favor of the plaintiff, Allen M. Sanders, and against the defendants, Georgia-Pacific Corporation and Rupert Sturgill.

*Reversed and remanded with instructions.*