465 S.E.2d 922

**Rebecca A. THOMSON, Plaintiff Below, Appellant**

**v.**

**Erma McGINNIS; Robert R. Vitello; the Property Centre, Inc.; David R. Stephens; and D & R Builders, Defendants Below, Appellees.**

No. 22872.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 1995.

Decided Dec. 15, 1995.

Duane C. Rosenlieb, Jr., St. Albans, for Appellant.

Stephen R. Crislip and George A. Halkias, Jackson & Kelly, Charleston, for Appellees.

WORKMAN, Justice:

This is an appeal by Rebecca A. Thomson (hereinafter "the Appellant"), from a final order of the Circuit Court of Kanawha County granting summary judgment to the Appellees, Erma McGinnis, Robert R. Vitello, and The Property Centre, Inc., in an action instituted by the Appellant alleging negligence and fraud in connection with her purchase of a home. The Appellant contends that genuine issues of material fact existed which should have precluded the lower court from granting summary judgment. We agree with the contentions of the Appellant, reverse the decision of the lower court, and remand this matter for consideration on the merits.

## I.

On April 20, 1992, the Appellant contracted to purchase a home located in Charleston, West Virginia. The Appellant was represented by Ms. Pam Grey of Home Finders Associates, Inc., and the seller was represented by Appellee Erma McGinnis, a real estate agent employed by Appellee The Property Centre, Inc.[1] At the request of the Appellant, the Appellees agreed to have the furnace inspected and to certify the working condition of the heating system.[2] The approval of the mortgage loan was also conditioned upon this inspection.

David Stephens, owner of Appellee D & R Builders, was retained by Ms. McGinnis and The Property Centre, Inc., to inspect the residence for termites and to install smoke detectors. During his performance of these duties on June 4, 1992, he was contacted by Ms. McGinnis[3] and asked to inspect the heating system. Mr. Stephens testified that he had previously been employed by Ms. McGinnis and The Property Centre, Inc., to inspect heating systems and that his performance of the inspection upon the home in question consisted of listening to the furnace running while he was in the home. He was later provided with a Heating Certification form by Ms. McGinnis upon which he certified that the furnace was in proper working condition. Having received certification of the condition of the furnace, the Appellant purchased the home.

On October 7, 1992, upon discovering that the furnace was not functioning, the Appellant telephoned Kerstein's Heating and Air-Conditioning. A representative of that business went to the Appellant's home and informed the Appellant that it would be dangerous to light the pilot light because the furnace had no safety shut-off switch. The Property Centre, Inc., was thereafter informed of the furnace problems, and Mr. Stephens and an associate went to the Appellant's residence to service the furnace. When the Appellant asked whether the associate was certified in heating and air-conditioning, it is the Appellant's testimony that Mr. Stephens informed her that neither Mr. Stephens nor his associate was certified in heating and air-conditioning. According to the testimony of both Mr. Stephens and the Appellant, Mr. Stephens also advised the Ap-

1. Appellee Robert Vitello was a broker for the Appellee The Property Centre, Inc., whose only involvement in this matter was his presence at the closing of the sale to the Appellant. Ms. McGinnis made the statement regarding finding someone to inspect the furnace, now alleged to be a misrepresentation, and Mr. Vitello and The Property Centre, Inc., are sued only upon an agency theory. Ms. Grey, the Appellant's agent, is not a party to this civil action.

2. According to the November 23, 1993, deposition of the Appellant, the alleged misrepresentation regarding the inspection of the furnace occurred during a conversation among Ms. Grey, Ms. McGinnis, and the Appellant. The Appellant testified that Ms. McGinnis informed her and her agent, Ms. Grey, that Ms. McGinnis would "take care of getting the inspection of the furnace." No other representations were made by Ms. McGinnis regarding the furnace.

3. Mr. Stephens testified that he received a telephone call from Ms. McGinnis while at the home on June 4, 1992. He informed the Appellant, however, that the conversation occurred in person when Ms. McGinnis appeared at the home during his attempt to conduct the termite inspection.

pellant that he never should have signed the certification and that he did so only at the direction of Ms. McGinnis. The Appellant thereafter obtained three estimates for a new furnace and accepted the bid of $1450. All three companies inspecting the furnace emphasized that the heating pipes connected to the furnace were wrapped in asbestos. The Appellant was informed by these companies that the asbestos could not be removed from the pipes due to the danger of asbestos fibers. The only recommendation they offered the Appellant was to wrap the pipes with tape to encase the asbestos insulation.

The Appellant filed a civil action alleging fraudulent misrepresentation and negligence on October 13, 1993. On September 22, 1994, the lower court granted the Appellees' motion for summary judgment. It is from that order that the Appellant appeals.

## II.

■ In syllabus point one of *Teter v. Old Colony Co.,* 190 W.Va. 711, 441 S.E.2d 728 (1994), we explained as follows:

> A vendor's real estate broker may be liable to a purchaser if the broker makes material misrepresentations with regard to the fitness or habitability of residential property or fails to disclose defects or conditions in the property that substantially affect its value or habitability, of which the broker is aware or reasonably should be aware, but the purchaser is unaware and would not discover by a reasonably diligent inspection. It also must be shown that the misrepresentation or concealment was a substantial factor in inducing the purchaser to buy the property.

*Id.* at 713, 441 S.E.2d at 730. In *Teter,* the prospective purchasers had expressed concern about a crack in a retaining wall, and the real estate agent agreed to secure the services of an engineer to examine the wall. 190 W.Va. at 715, 441 S.E.2d at 732. Based upon a written report indicating that the wall was in good condition, the Teters purchased the property. *Id.* Upon the collapse of the retaining wall, the Teters sought to establish

liability of the real estate company on the theories that it had failed to make a reasonably diligent inspection and that the engineering firm negligently inspecting the wall was an agent of the real estate company. *Id.* We held that a broker has no "independent duty to inspect and uncover latent defects on residential premises." 190 W.Va. at 719, 441 S.E.2d at 736.

■ We also concluded in *Teter* that the real estate company, by hiring an engineering firm to conduct an investigation, did not create an agency relationship whereby the real estate company could become liable for negligent acts of the engineering firm. *Id.* We based this latter determination upon the absence of any "evidence demonstrating that the broker retained any control over the manner in which the engineering firm performed its inspection of the premises." *Id.* at 720, 441 S.E.2d at 737. As we noted in syllabus point three of *Teter,* "[o]ne of the essential elements of an agency relationship is the existence of some degree of control by the principal over the conduct and activities of the agent." *Id.* at 713, 441 S.E.2d at 730. In syllabus point two of *Teter,* we also explained as follows:

> "An agent in the restricted and proper sense is a representative of his principal in business or contractual relations with third persons; while a servant or employee is one engaged, not in creating contractual obligations, but in rendering service, chiefly with reference to things but sometimes with reference to persons when no contractual obligation is to result." Syllabus Point 3, *State ex rel. Key v. Bond,* 94 W.Va. 255, 118 S.E. 276 (1923).

190 W.Va. at 713, 441 S.E.2d at 730.

■ In syllabus point four of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), we explained the following:

> Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

*Id.* at 190, 451 S.E.2d at 756. We emphasized the necessity for the nonmoving party to "take initiative and by affirmative evidence demonstrate that a genuine issue of fact exists." 192 W.Va. at 192, 451 S.E.2d at 758 n. 5. Doubt regarding the existence of a genuine issue of material fact, however, is to be resolved against the moving party. *Aetna Casualty and Sur. Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Moreover, as we emphasized in syllabus point four of *Henderson v. Coombs,* 192 W.Va. 581, 453 S.E.2d 415 (1994), " '[t]he question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined.' Syl. pt. 5, *Aetna Casualty & Surety Co. Federal Ins. Co. of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." *Id.* at 582, 453 S.E.2d at 416.

In the present case, unlike the scenario in *Teter,* there was some evidence tending to demonstrate that the broker retained an element of control over the actions of the individual inspecting the furnace. Despite the Appellees' contention that Mr. Stephens acted only as an independent contractor, the Appellant testified in her deposition that she was informed by Mr. Stephens that he signed the certification upon the direction of Ms. McGinnis. Mr. Stephens also testified that Ms. McGinnis contacted him while he was at the home performing the termite inspection and requested him to inspect the furnace, and that she actually provided him with the written heating certification to sign. We have previously noted that where factual conflict exists regarding the degree of control exercised and the nature of the relationship thereby created, jury resolution is warranted. *Spencer v. Travelers Ins. Co.,* 148 W.Va. 111, 133 S.E.2d 735 (1963). In *Spencer,* we stated that "[a]s a general rule, where the evidence relating to an independent contrac-

tor or employee is conflicting, or if not conflicting, where more than one inference can be derived therefrom, the question is one of fact for jury determination...." *Id.* at 118, 133 S.E.2d at 740. In syllabus point five of *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 418 S.E.2d 738 (1992), we elaborated:

> 'One who would defend against tort liability by contending that the injuries were inflicted by an independent contractor has the burden of establishing that he neither controlled nor had the right to control the work, and if there is a conflict in the evidence and there is sufficient evidence to support a finding of the jury, the determination of whether an independent contractor relationship existed is a question for jury determination.' Syllabus Point 1, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976).

187 W.Va. at 295, 418 S.E.2d at 741.

Based upon the foregoing, we find that there exists a genuine issue of material fact regarding the existence of an agency relationship between the Appellees and Mr. Stephens, precluding the summary judgment granted by the lower court.[4]

### III.

As an alternative to her position that the Appellees are liable for the negligent acts of Mr. Stephens based upon an employer/employee relationship, the Appellant also alleges in her complaint that the Appellees owed her "a duty to use reasonable care to discover and communicate truthful information about the subject property, and in particular ... the qualifications of the Defendant, David R. Stephens, to inspect furnaces and heating systems." The Appellant further asserts that the Appellees "breached this duty of reasonable care to obtain and communicate truthful and accurate information con-

---

4. If, upon remand, an agency relationship between Mr. Stephens and the Appellees is determined to exist, the rule of respondeat superior would apply to bind the Appellees for the negligent acts of their employee. As we noted in *Barath v. Performance Trucking Co.,* 188 W.Va. 367, 424 S.E.2d 602 (1992), "[t]he fundamental rule in West Virginia is that if it can be shown that an individual is an agent and if he is acting within the scope of his employment when he commits a tort, then the principle is liable for the tort as well as the agent." *Id.* at 370, 424 S.E.2d at 605.

cerning the subject property, and in particular ... the qualifications of the Defendant, David R. Stephens, to inspect furnaces and heating systems."

■ The Appellant is essentially asserting a claim of negligent hiring against the Appellees. While West Virginia has not previously addressed the specific issue of negligent hiring of an employee or an independent contractor, we have explained our approach to liability of an employer for the actions of an independent contractor as follows:

> The general rule is that where one person has *contracted with a competent person* to do work, not in itself unlawful or intrinsically dangerous in character, and who exercise no supervision or control over the work contracted for, such person is not liable for the negligence of such independent contractor or his servants in the performance of the work.

Syl. Pt. 1, *Chenoweth v. Settle Eng'rs, Inc.*, 151 W.Va. 830, 156 S.E.2d 297 (1967), *overruled in part on other grounds by Sanders*, 159 W.Va. at 628, 225 S.E.2d at 222. (emphasis added). Other jurisdictions have entertained a cause of action for negligent hiring of an independent contractor, reasoning that negligently securing the services of the independent contractor falls within one of several typically recognized exceptions to the rule that an employer is not liable for the actions of his independent contractor.[5] *See Payne v. Lee*, 686 F.Supp. 677, 679 (E.D.Tenn.1988), *aff'd sub nom. Payne v. The Law Center*, 872 F.2d 1027, 1989 WL 40258 (6th Cir.1989); *Sullivan v. St. Louis Station Associates*, 770 S.W.2d 352, 354–55 (Mo.App.1989).[6]

For instance, in *Del Signore v. Pyramid Sec. Servs., Inc.*, 147 A.D.2d 759, 537 N.Y.S.2d 640 (1989), the New York court held that an action for negligent hiring of an independent contractor who assaulted concert patrons could be maintained "where the employer engages an unqualified or careless contractor or, when on notice of deficient performance, fails to prevent the continuance of such negligence." *Id.* 537 N.Y.S.2d at 641. In *Levy v. Currier*, 587 A.2d 205 (D.C.1991), the District of Columbia Court of Appeals held that a townhouse owner could be liable to neighbors for negligent hiring of an independent contractor if the owner did not use reasonable care in selecting the contractor to perform work on a fire escape and if such negligent hiring caused a fire. *Id.* at 211–12. Similarly, in *Wasson v. Stracener*, 786 S.W.2d 414 (Tex.Ct.App.1990), the court explained that "[o]ne hiring an independent contractor may be held responsible for the contractor's negligent acts if the employer knew or should have known that the contractor was incompetent and a third person was injured because of the contractor's incompetency." *Id.* at 422. The *Wasson* court also noted that "[o]ne factor that courts have looked to in determining whether an employee was negligent in hiring an independent contractor is whether the employer conducted an inquiry into the contractor's qualifications before hiring the contractor." *Id.*

In *King v. Associates Commercial Corp.*, 744 S.W.2d 209 (Tex.Ct.App.1987), buyers of a truck brought an action against the secured creditor's assignee regarding the wrongful repossession of a truck. In discussing the application of the negligent hiring theory, the

---

**5.** The traditional rule regarding liability of employers for the negligent acts of an independent contractor is that the employer is not liable for such acts committed in the performance of the work the contractor was hired to perform. *See* Syl. Pt. 5, *Law v. Phillips*, 136 W.Va. 761, 68 S.E.2d 452 (1952). Exceptions previously recognized by this Court include work which is in itself unlawful, work which is intrinsically dangerous, and work which is likely to cause injury to another person if proper care is not taken. *Id.* at 762, 68 S.E.2d at 454.

**6.** Where a negligent hiring cause of action is predicated upon section 411 of the Restatement

(Second) of Torts (1963), physical harm must result from the negligence. That section provides as follows:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.

court noted that "[a]n employer has a duty to use ordinary care in employing an independent contractor." *Id.* at 213 (citing *Jones v. Southwestern Newspapers Corp.,* 694 S.W.2d 455, 458 (Tex.Ct.App.1985)). Regarding the care utilized in investigating the qualifications of the independent contractor, the court held that the employer "did conduct a sufficient inquiry into [the independent contractor's] qualifications before it hired the contractor to repossess the truck...." 744 S.W.2d at 214. "Negligence is not to be presumed—the mere fact that an independent contractor negligently caused an injury to another affords no presumption that the employer was negligent in his selection of the contractor." *Id.* (citing *Moore v. Roberts,* 93 S.W.2d 236, 239 (Tex.Ct.App.1936)).

■ Accordingly, we hold that while a real estate broker bears no responsibility to conduct an independent investigation of a latent defect, when such broker volunteers to secure an inspection of the premises, or some part thereof, by retaining on behalf of the buyer a third party to conduct the inspection, then that real estate broker may be held liable to the buyer for civil damages if the broker in retaining said third party is negligent in the selection and retention of the third party and if such negligence proximately causes harm to the buyer. By so ruling, we do not impose upon a real estate broker the affirmative duty to conduct a comprehensive inquiry into the credentials of an individual hired as an independent contractor. Where the independent contractor selected is a licensed, reputable individual or firm, for instance, the broker is not obligated to engage in a personal inquiry into the credentials or training of the contractor. However, where the exercise of reasonable diligence would disclose facts demonstrating that the contractor was clearly incompetent for the particular task contemplated, a reasonably prudent broker should not retain the contractor.

■ The Appellant in the instant case has alleged a cause of action for negligent hiring by asserting that the Appellees knew or should have known that Mr. Stephens was not qualified to inspect furnaces or heating systems. The questions of whether the Appellees created an agency relationship in retaining Mr. Stephens, and whether the Appellees knew or should have known that Mr. Stephens was not qualified to inspect heating systems create genuine issues of material facts precluding summary judgment and justifying the remand of this matter for examination of those issues.

## IV.

■ The Appellees contend that the Appellant waived and released all claims she could have had regarding the inspection of the home by signing a waiver included within the closing documents.[7] The Appellant responds by asserting that her waiver was fraudulently induced by the Appellees to the extent that she purchased the home and signed the documents based solely upon her reliance on the inspection of the furnace by a properly certified and qualified inspector. We have previously held that "fraud in the procurement of an agreement or the obtaining of some benefit vitiates any right to receive the fruits of the contract or the benefits." *North v. West Virginia Bd. of Regents,* 175 W.Va. 179, 183, 332 S.E.2d 141, 145 (1985), *cert. denied,* 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986); *accord* Syl. Pt. 1, *Jones v. Comer,* 123 W.Va. 129, 13 S.E.2d 578 (1941). In regard to releases of liability for personal injury, we explained in *Peters v. Cook,* 152 W.Va. 634, 165 S.E.2d 818 (1969), that "if a written release releasing a claim for personal injuries is obtained by fraud, duress or incapacity such release will not sustain a plea of accord and satisfaction." *Id.* at 637, 165 S.E.2d at 821. "However, the burden of proving such matters by clear and distinct

7. The form signed by the Appellant which allegedly waives the right to advance claims regarding the inspections of the home was one promulgated by the Kanawha Board of Realtors. It stated as follows:

Purchasers hereby waive their right to these inspections [of structural integrity, utility lines, physical and mechanical components] and agree to relieve Homefinders Associates, Inc., broker, agents and seller(s) of any liability or responsibility pertaining to these inspections.

evidence rests upon the plaintiff or the person attempting to vitiate the release." *Id.* The issue of the effect of the waiver in the present case and whether it was fraudulently induced must also be taken up on remand in conjunction with the issues discussed above.

Based upon the foregoing, we find that the Appellant presented sufficient evidence to preclude summary judgment, we reverse the decision of the lower court, and we remand for consideration of the merits of this action.

Reversed and remanded.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.