483 S.E.2d 265

**Joy F. KING and David L. King, her husband, and David L. King, natural parent and next friend of Shannon King, an infant, Plaintiffs, Petitioners,**

**v.**

**LENS CREEK LIMITED PARTNERSHIP, a West Virginia Limited Partnership; Long Management Company, a West Virginia Corporation; Toyota Motor Sales, USA, Inc., a Corporation; Mid–Atlantic Toyota Distributors, Inc., a Corporation; and Bud Young Toyota, Inc., a West Virginia Corporation, Defendants.**

**Joy F. KING and David L. King, her husband, and David L. King, natural parent and next friend of Shannon King, an infant, Plaintiffs**

**v.**

**LENS CREEK LIMITED PARTNERSHIP, a West Virginia Limited Partnership; Long Management Company, a West Virginia Corporation; Toyota Motor Sales, USA, Inc., a Corporation; Mid–Atlantic Toyota Distributors, Inc., a Corporation; and Bud Young Toyota, Inc., a West Virginia Corporation, Defendants.**

**Lens Creek Limited Partnership, a West Virginia Limited Partnership and Long Management Company, a West Virginia Corporation, Petitioners.**

**Nos. 23334, 23335.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1996.

Decided Dec. 16, 1996.

---

**138**

Marc B. Chernenko, Wellsburg and Jerry W. Cook, Cook & Cook, Madison, for the Kings.

E.W. Rugeley, Jackson & Kelly, Charleston, for Toyota Companies.

Joanna I. Tabit, Steptoe & Johnson, Charleston and James J. MacCallum, Shaffer & Shaffer, Madison, for Lens Creek and Long.

RECHT, Judge:[1]

In this case we are presented with two certified questions from the Circuit Court of Boone County regarding the liability of a principal, who retains an independent contractor who lacks adequate liability insurance

and injures a third party through the negligent operation of an empty logging truck.

From this factual construct evolves the following certified questions and circuit court's answers:

1. Whether in a commercial transaction an independent contractor who lacks adequate liability insurance or financial resources to respond in damages is incompetent *per se* such that liability for the contractor's negligence will be imposed upon the employer, regardless of the independent contractor's skills?

Circuit court's answer: YES

2. Whether the operation of an empty commercial log truck upon the highways of our state is an inherently dangerous activity such that [it] will impose the negligence of the truck driver to his employer, regardless of the nature of the employment relationship?

Circuit court's answer: NO

 The certified questions are the result of the circuit court's denial of the parties' motions for partial summary judgment. "West Virginia Code, 58-5-2 (1967), allows for certification of a question arising from a denial of a motion for summary judgment. However, such certification will not be accepted unless there is a sufficiently precise and undisputed factual record on which the legal issues can be determined. Moreover, such legal issues must substantially control the case." Syllabus Point 5, *Bass v. Coltelli*, 192 W.Va. 516, 453 S.E.2d 350 (1994). Because there is a sufficiently precise and undisputed factual record upon which the legal issues can be determined, and because these legal issues substantially control this case, the questions are properly certified under W. Va.Code 58-5-2 (1967).[2] We therefore con-

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. W. Va.Code 58-5-2 (1967) provides, in pertinent part:

Any question arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party, in any case within the appellate jurisdiction of the

sider the questions certified by the circuit court and answer both certified questions in the negative.

## I.

### FACTS

The defendant, Lens Creek Limited Partnership (hereinafter "Lens Creek"),[3] owns a parcel of land in Kanawha County approximately 2800 acres in size upon which there is a quantity of standing timber. In January of 1988, Lens Creek entered into a "Timber Agreement" with Frederick Gene Maloskey and Tommy D. Mann, d/b/a M & M Trucking/Ashford (hereinafter "M & M"), whereby M & M would purchase timber located on the Lens Creek property and transport the timber for sale to third-party buyers. In addition to an initial purchase price, Lens Creek received a percentage of the gross income from timber sold by M & M. Under the "Timber Agreement," M & M was required to carry public liability insurance with coverage limits in the amount of $300,000 and property insurance with coverage limits in the amount of $500,000.

Shortly after entering into the "Timber Agreement," M & M quit the timber operation. Dallas C. Holstein and Clayton L. Holstein, who are brothers, assumed the operation under the same terms previously agreed upon between Lens Creek and M & M.

On June 25, 1993, Dallas Holstein, who was returning to the Lens Creek property after delivering a shipment of timber, entered Route 119 (also known as Corridor G) without yielding the right of way, thereby causing a collision between the empty logging truck he was operating and an automobile operated by one of the plaintiffs, Joy King, who was returning home from work.[4] As a result of the collision, Mrs. King suffered head and internal injuries, incurring medical costs exceeding $110,000.00 and suffering over $11,-000.00 in lost wages.

This civil action was instituted in the Circuit Court of Boone County, which was filed by Joy King, her husband David King, and a consortium claim brought on behalf of their daughter, Shannon King. Among the defendants named were the Holsteins, Lens Creek Limited Partnership, and Long Management Company.[5]

The record indicates that the Kings filed two motions for partial summary judgment. The first motion asserted that the Kings were entitled to judgment as a matter of law that Lens Creek was negligent in hiring a competent independent contractor because the contractor lacked adequate liability insurance and financial resources. The Kings filed a second motion for partial summary judgment on the issue of liability against Lens Creek, contending that they were entitled to judgment as a matter of law because the operation of the logging truck by Dallas Holstein was an inherently dangerous activity, as recognized by West Virginia law,[6] and that the negligence of Mr. Holstein should therefore be imputed to Lens Creek.

---

supreme court of appeals, may, in the discretion of the circuit court in which it arises, and shall, on the joint application of the parties to the suit, in beneficial interest, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back.

3. The defendant Long Management Company is the general partner in the Lens Creek Limited Partnership. We will refer to both of these defendants hereinafter as simply "Lens Creek."

4. Dallas Holstein entered a plea of guilty to the charge of failing to yield the right of way in the Magistrate Court of Boone County.

5. The Kings' civil action was instituted against a number of defendants, including Toyota Motor Sales, USA, Inc., Mid–Atlantic Toyota Distribu-

tors, Inc., and Bud Young Toyota, Inc., none of whom participated in these proceedings. The Kings agreed to settlements with Dallas Holstein in the amount of $200,000 (the total amount of his insurance policy) and Clayton Holstein in the amount of $35,000, both of which were approved by the circuit court in its orders entered August 1, 1994 and December 29, 1994.

6. In their memorandum of law in support of their motion, the Kings rely on *Griffith v. George Transfer & Rigging, Inc.,* 157 W.Va. 316, 201 S.E.2d 281 (1973) in support of their argument that the operation of an empty logging truck is an inherently dangerous activity. As we will discuss, *infra, Griffith* is inapposite to the resolution of the certified questions presented to us.

Conversely, the record indicates that Lens Creek also filed two motions for partial summary judgment. The first motion requested the circuit court rule as a matter of law that a negligent hiring cause of action does not turn on the independent contractor's financial responsibility, in other words, competency does not equate with financial responsibility. Lens Creek's second motion for partial summary judgment requested the circuit court rule as a matter of law that the negligence of an independent contractor, while operating an empty logging truck, should not be imputed to the principal who has contracted for services, because the operation of the empty logging truck is not an inherently dangerous activity.

The circuit court, in its order of October 26, 1995, sorted through all of these various motions for partial summary judgment—with their diverse and alternate theories of liability or lack thereof—and found a genuine issue of fact existed upon the Kings' theory of liability asserted under a negligent hiring standard of liability, and also concluded that the operation of an empty commercial logging truck is not an inherently dangerous activity. As a result, the circuit court denied the parties' cross-motions for summary judgment on the negligent hiring issue, granted Lens Creek's motion for summary judgment that the operation of an empty logging truck is not inherently dangerous, and certified the two questions we have previously noted.

## II.

### DISCUSSION

■ We review questions of law answered and certified by a circuit court under a *de novo* standard. Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

### A.

The circuit court's first certified question to this Court is framed as follows:

Whether in a commercial transaction an independent contractor who lacks adequate liability insurance or financial resources to respond in damages is incompetent *per se* such that liability for the contractor's neg-

ligence will be imposed upon the employer, regardless of the independent contractor's skills?

■ The general rule in this State is that "where one person has contracted with a competent person to do work, not in itself unlawful or intrinsically dangerous in character, and who exercise[s] no supervision or control over the work contracted for, such person is not liable for the negligence of such independent contractor or his servants in the performance of the work." Syllabus Point 1, *Chenoweth v. Settle Eng'rs, Inc.*, 151 W.Va. 830, 156 S.E.2d 297 (1967), *overruled, in part, on other grounds by Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). *See also Thomson v. McGinnis*, 195 W.Va. 465, 465 S.E.2d 922 (1995).

We recently had occasion to address what appears to be for the first time the imposition of liability upon a principal for its negligence in hiring an independent contractor who is not careful or competent. *Thomson v. McGinnis*, 195 W.Va. 465, 465 S.E.2d 922 (1995). We held in *Thomson* that a real estate broker who volunteers to secure an inspection of property may be held liable to the buyer for civil damages if the broker is negligent in the selection and retention of the third party, and if such negligence proximately causes harm to the buyer. Syllabus Point 8, *Thomson*, 195 W.Va. 465, 465 S.E.2d 922.

In *Thomson*, we also noted that section 411 of the Second Restatement of Torts provides useful guidance as to what constitutes a cause of action for negligent hiring. *Thomson*, 195 W.Va. at 471 n. 6, 465 S.E.2d at 928 n. 6. Section 411 provides:

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or

(b) to perform any duty which the employer owes to third persons.

Restatement (Second) of Torts § 411 (1965).

The plaintiffs invite us to hold that a principal should be subject to liability for physi-

cal harm caused by his failure to exercise reasonable care to employ a competent and careful contractor, and that a contractor is incompetent when he lacks adequate liability insurance or financial resources. In support of their argument, the plaintiffs rely primarily on *Becker v. Interstate Properties*, 569 F.2d 1203 (3d Cir.1977) *cert. denied* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978), in which the Third Circuit, sitting in a diversity jurisdiction case and attempting to predict what the New Jersey Supreme Court would do in a similar case, found that the failure to engage a properly solvent or adequately insured subcontractor is a violation of the duty to obtain a competent independent contractor.

■ Our research reveals that the *Becker* opinion is rather lonely, and that the great majority of cases on this issue is indicative that *Becker* singularly represents the proposition that the hiring of an underinsured or insured independent contractor is tantamount to the negligent hiring of an incompetent independent contractor. *See, e.g., Robinson v. Jiffy Executive Limousine Co.*, 4 F.3d 237 (3d Cir.1993) (a more recent opinion from the Third Circuit which appears to impliedly reject *Becker* ). We believe a sounder general rule is that the independent contractor's lack of sufficient liability insurance or financial responsibility has no causal connection to the injuries suffered by the third party as a result of the independent contractor's negligence, and should not make the principal liable for the independent contractor's negligence. *See Robinson v. Jiffy Executive Limousine Co.*, 4 F.3d 237 (3d Cir. 1993); *Stone v. Pinkerton Farms, Inc.*, 741 F.2d 941 (7th Cir.1984); *Cassano v. Aschoff*, 226 N.J.Super. 110, 543 A.2d 973, *cert denied*, 113 N.J. 371, 550 A.2d 476 (1988). *See also Matanuska Elec. Ass'n, v. Johnson*, 386 P.2d 698, 702–03 (Alaska 1963).

Additionally, in reading section 411 of the Second Restatement of Torts, we do not find that the scope of the definition of a "competent and careful contractor" was intended to extend beyond the "knowledge, skill, experi-

ence, and available equipment" of a reasonable person. Restatement (Second) of Torts § 411 cmt. a (1965). Further, we note that the commentary to section 411 declines to include financial responsibility as an indicia of an independent contractor's competence:

> g. *Financial responsibility*. The rule stated in this Section makes the employer responsible only for his failure to exercise reasonable care to employ a contractor who is competent and careful. *It has no application where the contractor, although competent and careful, is financially irresponsible.*

Restatement (Second) of Torts § 411 cmt. g (1965) (emphasis added to last sentence). For these reasons, we decline to consider as a criterion of competence the financial responsibility of the independent contractor as an element of a negligent hiring theory of recovery. We therefore answer the first certified question in the negative.

### B.

We next address the second certified question of whether the operation of an empty commercial logging truck on the highways of our state is so inherently dangerous that liability will be imposed upon a principal who retains an independent contractor who is negligent in the operation of that truck.

As set forth above, the question certified by the circuit court was articulated as follows:

> Whether the operation of an empty commercial log truck upon the highways of our state is an inherently dangerous activity such that [it] will impose the negligence of the truck driver to his employer, regardless of the nature of the employment relationship?

■ This certified question is premised upon the exception to the general rule that a principal will be held liable for the negligence of an independent contractor if the activity, for which the independent contractor was retained, is inherently or intrinsically dangerous.[7,8] Syllabus Point 1, *Chenoweth v. Set-*

---

7. The terms inherently dangerous and intrinsically dangerous are synonymous. *See* Restatement (Second) of Torts § 427 cmt. b (1965).

8. In their papers, the parties appear to be using the terms inherently dangerous activity and abnormally dangerous activity as interchangeable

tle Eng'rs, Inc., 151 W.Va. 830, 156 S.E.2d 297 (1967), overruled, in part, on other grounds by Sanders v. Georgia–Pacific Corp., 159 W.Va. 621, 225 S.E.2d 218 (1976). This exception to nonliability emerges from the principal's non-delegable duty to exercise reasonable care when performing the inherently dangerous activity; a duty that the principal cannot discharge by hiring an independent contractor to undertake the activity.[9] See Majestic Realty Assoc. v. Toti Contracting Co., 30 N.J. 425, 153 A.2d 321 (1959).

▪ Is the operation of an empty logging truck an inherently dangerous activity? We have not had the opportunity to address what constitutes an inherently dangerous activity as part of our negligence jurisprudence. However, in Arthur v. Holy Rosary Credit Union, the Supreme Court of New Hampshire provides a useful definition of what constitutes inherently dangerous activity:

> [T]o be an inherently dangerous activity, construction, or any other work, [it] must be dangerous in and of itself and not dangerous simply because of the negligent performance of the work, and that the danger must be naturally apprehended by the parties when they contract. Only then will the work constitute an inherent danger

that places a non-delegable duty upon the one ordering it to protect third parties against resulting injury.

Arthur v. Holy Rosary Credit Union, 139 N.H. 463, 656 A.2d 830, 833 (1995) (citation omitted).[10]

▪ Adopting this definition into our own jurisprudence, we find that the operation of an empty logging truck is not in and of itself dangerous so that harm will likely result if special precautions are not taken; but only dangerous, as was the case here, when the truck is operated in a negligent manner. The mere negligent operation of an empty logging truck does not create the type of danger constituting inherently dangerous activity for which the principal cannot delegate its duty. We find more specific support in the case law from other jurisdictions, which hold that the mere operation of an empty tractor trailer truck is not so inherently dangerous as to make an principal liable for the injuries caused by the negligence of an independent contractor. Eastern Airlines v. Joseph Guida & Sons Trucking Co., 675 F.Supp. 1391 (E.D.N.Y.1987); Eckard v. Johnson, 235 N.C. 538, 70 S.E.2d 488 (1952).

The plaintiffs rely on Griffith v. George Transfer & Rigging, Inc., 157 W.Va. 316, 201

---

concepts. This is not correct. Inherently dangerous activity and abnormally dangerous activity are not synonymous terms: a person engaged in inherently dangerous activity can take precautionary steps to minimize the risk of injury; whereas a person engaged in abnormally dangerous activities is subject to strict liability, i.e., liability no matter how carefully the activity is undertaken. Wagner v. Continental Casualty Co., 143 Wis.2d 379, 421 N.W.2d 835, 840 (1988).

9. An inherently dangerous function cannot be delegated because the responsibility to ensure that all reasonable precautions are taken before engaging in a dangerous activity is of such importance to the community that the principal should not be permitted to transfer its duty to another. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 71, at 511–12 (5th ed.1984).

10. We also find guidance from one of the scholarly treatises addressing the topic of inherently dangerous activity. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 71 (5th ed.1984) (hereinafter "Prosser"). In distinguishing what does and what does not constitute an inherently dangerous activity, Prosser sets forth a

helpful hypothetical using the operation of tractor trailers as an example. Prosser explains that while a principal who retains an independent contractor to transport goods must realize that harm to others is likely to occur if driven at excessive speed or with defective brakes, such foreseeable danger is not within the scope of "inherent danger" as legally applied. In contrast, the transportation of giant logs, which would required a special care to fasten them securely, would present a special danger, and liability would be imputed to the employer if special care is not employed. W. Page Keeton, et al., Id. at 514–15. In recognizing that the concept of inherently dangerous activity may be a difficult concept to categorize, Prosser points us to an opinion out of the Court of Appeals of North Carolina, in which the court stated:

> The difficulty ... lies in making the not altogether obvious distinction between work done by an independent contractor which is intrinsically dangerous in that harm will likely result if precautions are not taken, and work which is not intrinsically dangerous in that it is merely the sort of work which could produce injury if carelessly performed.

Id. at 514–515 n. 66 (quoting Deitz v. Jackson, 57 N.C.App. 275, 291 S.E.2d 282 (1982)).

S.E.2d 281 (1973) in support of their argument that tractor trailers create an unreasonable risk of harm to others. *Griffith,* though, is not entirely apposite to the certified question before us. In *Griffith,* the Court stated that the operation of tractor-trailers on our public highways creates an "unreasonable risk of harm to others." *Griffith,* 157 W.Va. at 323, 201 S.E.2d at 286. However, we held that "[o]ne who carries on an activity which requires a franchise from a public authority and involves an unreasonable risk of harm to others[ ] is subject to liability for physical harm caused to others by the negligence of a contractor employed to perform the franchise activity." Syllabus Point 2, *Griffith,* 157 W.Va. 316, 201 S.E.2d 281. The certified question as presented to us does not address the issue of the ownership of a franchise by Lens Creek, and the performance of that franchise activity by an independent contractor. We decline to expand the certified question to facts that are not before us and answer this certified question in the negative.

### III.

### CONCLUSION

For the foregoing reasons, we find that the financial resources and liability insurance of an independent contractor are of no significance in the determination of whether an independent contractor is competent and careful for purposes of a negligent hiring theory of recovery. We agree with the circuit court that the operation of an empty logging truck on the public highways of this state is not so inherently dangerous so that liability will be imposed upon the principal who retains the independent contractor. The certified questions having been answered, this case is dismissed from the docket.

Certified questions answered.