519 S.E.2d 649

STATE ex rel. Jesse WHITE, Petitioner,

v.

George TRENT, Warden of the West Virginia Penitentiary, et al., Respondents.

State ex rel. Kelly Williams, Petitioner,

v.

Paul Kirby, Warden, Northern Regional Jail and Correctional Facility, Respondent.

State ex rel. Charles Owens, Petitioner,

v.

Nicholas Hun, Commissioner, Division of Corrections, et al., Respondents.

No. 25823.

Supreme Court of Appeals of West Virginia.

Submitted June 2, 1999.

Decided June 28, 1999.

Darrell V. McGraw, Jr., Attorney General, Charles Houdyschell, Jr., Assistant Attorney General, Charleston, West Virginia, Attorneys for Division of Corrections.

Jesse White, Kelly Williams, Charles Owens, Pro Se.

McGRAW, Justice:

This case is before us as a certified question from the Circuit Court of Marshall County. The lower court asks:

> Whether an inmate seeking relief as to his conditions of confinement, such as medical care or inmate classification or reinstatement as an inmate employee, is entitled to a public defender, when all other eligibility conditions have been met.

The circuit court answered this question in the affirmative. We do not agree, and answer that, an inmate seeking relief with respect to conditions of confinement is *not* entitled to representation by the public defender, as defined below.[1]

I.

*Factual Background*

This case is a consolidation of three actions filed separately in the Circuit Court of Marshall County by three inmates. The trial judge consolidated these cases by order dated September 2, 1998, and stayed the proceedings in these actions until this Court could answer the certified question. In each case, an inmate, or a group of inmates, argues that conditions of incarceration violate his, or their, rights in some way.

Inmate Jesse W. White complained, *inter alia*, that he was improperly transferred from the normal prison population into "punitive administrative segregation protective custody status" without adherence to the proper procedure, and that he should have

---

1. We do not mean to foreclose the possibility that an inmate seeking relief with respect to the conditions of his or her confinement may be appointed an attorney, other than the public defender, in the discretion of the court.

received a hearing in connection with this transfer.[2]

Inmate Kelly Williams is one of several inmates who filed a joint petition in which they alleged that they received improper treatment at the Northern Regional Jail, including, a denial of tobacco products and failure to provide counseling for resulting withdrawal symptoms, and a failure to provide the prisoners adequate access to the prison law library.[3]

Inmate Charles Owens filed a suit for monetary damages and other relief, alleging that he was wrongfully discharged from his job in the kitchen of the Northern Regional Jail.[4]

The merits of these claims are not before us, and we shall not address the arguments made by the inmates in their petitions at this time. The narrow issue before us concerns only whether the inmates are entitled to the assistance of the public defender, as defined below, in pursuing actions relating to the conditions of their confinement.[5]

## II.

### Standard of Review

■ Our standard of review is evident: "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996); *see also, King v. Lens Creek Ltd. Partnership*, 199 W.Va. 136, 140, 483 S.E.2d 265, 269 (1996).

## III.

### Discussion

■ The term "public defender" has a specific meaning under our law. Although the phrase is sometimes used generically to mean "appointed counsel," the legislative definition is more precise. Our Code states that a "Public defender" is:

The staff attorney employed on a full-time basis by a public defender corporation who, in addition to providing direct representation to eligible clients, has adminis-

2. Mr. White also alleges that he was unlawfully deprived of certain privileges without a specifically articulated reason for his treatment, and that he was denied proper medical treatment for his hypertension condition, and that there is no full time physician present at the prison to oversee effective medical treatment for the prisoners. Mr. White goes on to make other allegations, including an improper reduction in work hours in his prison job, a denial of access to the law library, an improper transfer to and from the Pocahontas County Jail and the Huttonsville Correctional Center, that prison nurses practice without a license or proper training, inadequate dental care, ongoing, inadequate supervision of confidential medical records, a failure on the part of the state to subject prison guards to psychological testing before hiring them, a conspiracy on behalf of correctional officers to defame Mr. White, retaliation by correctional officers, against Mr. White because of information he provided regarding an earlier prison riot, a failure to expunge certain information from Mr. White's official record in violation of court order, the improper giving of gifts to inmates by correctional officers and the improper mingling of "protective custody" inmates with the general prison population.

3. The other claims of the prisoners in the Kelly Williams petition included a claim for improper detention in the punitive segregation unit of the jail and various violations stemming from that detention, including: the removal, from their cells, of personal hygiene items and the prisoners personal shoes (whereupon the prisoners were made to wear "flip-flop" shower shoes), the confiscation of "personal legal documents," inadequate access to the prison book cart, a denial of visitation time with friends and family members, a denial of requested plastic chairs in each cell, a restriction on mail privileges, a requirement that prisoners' eat in their cells in close proximity to their toilets, severe limitations on phone privileges, verbal abuse by correctional officers, a refusal to provide periodic review of the prisoners segregated status, and a denial of extended commissary privileges, religious programs, educational programs, social services, library services and recreational programs.

4. Mr. Owens also alleged that he was detained for over 72 hours without being served a rule violation, that he was improperly transferred to a maximum security facility, that he was improperly transferred to a regional jail, that he was denied the usual programs during the time he was transferred, that he was transferred and denied access to programs in retaliation for his efforts to reclaim his kitchen job, that unjustified punishments placed on his record will adversely affect his chances for parole and should be expunged, and that he was denied back pay.

5. Indeed, the passage of time has rendered moot many of the issues presented in the underlying habeas petitions.

trative responsibility for the operation of the public defender corporation.

W. Va.Code § 29–21–2 (1996). In common parlance, members of the legal community might use the term "public defender" to describe any attorney appointed by a court; these terms are not synonymous. The terms "a public defender" and "the public defender" refer to a staff attorney of the legislatively created public defender service, as defined in West Virginia Code § 29–21–2 (1996), and should not be confused with the term "appointed counsel."

Although, in many cases, private attorneys are appointed by courts to defend clients and do receive payment from the state in some fashion, the receipt of such "public" funds does not, in and of itself, render such an attorney a "public defender."

As well as establishing who "public defenders" are, the West Virginia Code describes for whom and in what situations the public defender must provide legal assistance:

(1) "Eligible client:" Any person who meets the requirements established by this article to receive publicly funded legal representation in an eligible proceeding as defined herein;

(2) "Eligible proceeding:" Criminal charges which may result in incarceration; juvenile proceedings; proceedings to revoke parole or probation if the revocation may result in incarceration; contempt of court; child abuse and neglect proceedings which may result in a termination of parental rights; mental hygiene commitment proceedings; extradition proceedings; proceedings which are ancillary to an eligible proceeding, including, but not limited to, proceedings to enhance sentences brought pursuant to sections eighteen and nineteen, article eleven, chapter sixty-one of this code, forfeiture proceedings brought pursuant to article seven, chapter sixty-a of this code, and proceedings brought to

obtain extraordinary remedies; and appeals from or post-conviction challenges to the final judgment in an eligible proceeding. Legal representation provided pursuant to the provisions of this article is limited to the court system of the state of West Virginia, but does not include representation in municipal courts unless the accused is at risk of incarceration;

West Virginia Code § 29–21–2 (1996).

This list is a limited one, and for good cause. This Court has, in prior cases, recognized serious shortcomings in the way the State was then providing legal representation for indigent persons charged with a crime:

> [T]he system, as it currently exists [as of 1976], does not guarantee adequate representation of those persons for whose benefit it was created. We acknowledge that the appointment system has no built-in guarantees of effective assistance and in some aspects may have the potential for frustrating the delivery of effective defense services. Some of the problem areas are untimeliness of appointment, inadequate or nonexistent investigative and defense support resources, the indiscriminate nature of the appointment system and the absence of economic incentive to the attorneys appointed.

*State ex rel. Partain v. Oakley,* 159 W.Va. 805, 820–21, 227 S.E.2d 314, 322–23 (1976). Although the legislature increased compensation for appointed attorneys after *Partain,*[6] problems persisted, and we were called upon to address this issue again in *Jewell v. Maynard,* 181 W.Va. 571, 383 S.E.2d 536 (1989).

In *Jewell v. Maynard* we observed that the legislative creation of public defender offices in West Virginia was a response to the issues we described in *Partain, supra.* "In response, the legislature created Public Legal [now Defender] Services, W. Va.Code, 29–21–1 [1989] *et seq.,* authorizing experiments with new, salaried, public defenders."

---

6. "The legislature responded to *Partain* during the 1977 regular session by replacing the $200 flat fee for felony cases and $100 flat fee for misdemeanor cases with an hourly rate of $20 per hour for out-of-court work and $25 per hour for in-court work." *Jewell v. Maynard,* 181 W.Va. 571, 573 383 S.E.2d 536, 538 (1989).

*Jewell v. Maynard,* 181 W.Va. 571, 573, 383 S.E.2d 536, 538 (1989). In this opinion, Justice Neely also described the evil the legislature was seeking to prevent by creating the public defender service:

Perhaps the most serious defect of the present system is that the low hourly fee may prompt an appointed lawyer to advise a client to plead guilty, although the same lawyer would advise a paying client in a similar case to demand a jury trial. Although the master did not have reliable evidence concerning this problem in West Virginia, he cited one study showing that 75 percent of defendants with court-appointed counsel plead guilty, while only 20 percent of defendants with retained counsel plead guilty. R. Hunter, "Slave Labor in the Courts—A Suggested Solution," 74 Case & Com. No. 4 at 3 (1969).

*Id.* 181 W.Va. at 575, 383 S.E.2d at 540. What is clear from the foregoing, is that the primary purpose of the public defender is to do just what the name implies, defend members of the public from criminal charges and other, similar or related actions, as set forth in W. Va.Code § 29–21–2 (1996). To require the public defender to represent inmates in actions relating to the conditions of their confinement might well inundate and overwhelm the system, thwarting the goals of the legislature, as recognized by this Court.

In order for the legislatively created public defender service to receive funding to provide representation in a given situation, such representation must be of a kind allowed under the statute. In response to a certified question regarding fees for an attorney appointed guardian *ad litem* for an inmate we held:

Because there is neither a valid statute nor an appropriation for an expenditure providing compensation to a lawyer appointed as a guardian *ad litem* for an incarcerated convict named as a defendant in a civil action, there exists no lawful authority for a trial court to order, or the Administrative Director to pay the guardian *ad litem* fees in such an action.

*Quesinberry v. Quesinberry,* 191 W.Va. 65, 69, 443 S.E.2d 222, 226 (1994). The question before us demands a similar answer.

## IV.

### *Conclusion*

Turning to the certified question at hand, we find we must reply in the negative. None of the inmates face "[c]riminal charges which may result in incarceration; juvenile proceedings; [or] proceedings to revoke parole or probation if the revocation may result in incarceration." West Virginia Code § 29–21–2 (1996).

From the record we know that none of the petitioners are charged with "contempt of court" and none face "child abuse and neglect proceedings which may result in a termination of parental rights; mental hygiene commitment proceedings; [or] extradition proceedings." None are appealing "proceedings which are ancillary to an eligible proceeding, including, but not limited to, proceedings to enhance sentences brought pursuant to sections eighteen and nineteen, article eleven, chapter sixty-one of this code, forfeiture proceedings brought pursuant to article seven, chapter sixty-a of this code, and proceedings brought to obtain extraordinary remedies;[7] and appeals from or post-conviction challenges to the final judgment in an eligible proceeding." W. Va. Code § 29–21–2 (1996).

■ Because, in the case before us, no inmate seeks representation for an eligible proceeding, as defined by the statute, no statutory authority exists that would require the public defender to represent one of these inmates and expend state funds in doing so. *Quesinberry v. Quesinberry,* 191 W.Va. 65,

---

7. Though one might argue that this provision would entitle any habeas corpus petitioner to representation by the public defender, we feel that this phrase must be interpreted in light of the rest of the statutory language. Therefore, we feel the phrase "extraordinary remedies" in this statute refers to the pursuit of such remedies only

443 S.E.2d 222 (1994). Therefore, we hold that an inmate seeking relief as to the conditions of his or her confinement, such as medical care or inmate classification or reinstatement as an inmate employee, is *not* entitled to representation by the public defender, even though all other eligibility conditions have been met.[8]

Certified Question Answered.

when such pursuit is ancillary to a listed, eligible proceeding.

8. We do not consider, in answering this certified question, the broader issue of under what circumstances a particular indigent individual, free or incarcerated, would be entitled to court appointed representation.